JOHN G. CHRISTOPHER *et al., Appellants,* v. JANE MUNGEN *et al., Appellees.*

Opinion Filed December 10, 1913.

1. Where a trustee of real estate takes no title that may descend to his heirs or to his administrator, a deed covering the land made by the administrator and heirs of the trustee conveys no title.

2. A grantee in a deed conveying no title, will not be heard to

complain that possible rights in the grantor therein have been invaded.

3. In a suit for partition where the only valid claim of the defendants is through E., who has only the same rights in the property that the complainant J. has, both E. and J. being children of the deceased 'owned of the property by slave marriages, the defendants as the successors in title to E. cannot complain of an adjudication that E. had equal rights with J., when the defendants averred that neither E. nor J. took as heirs of the father, nor are any vested rights of the defendants invaded by according to J. equal rights with them in the property, since the defendants have only the rights of E., and J. and E. take equal shares under the same statutes allowing them to inherit from their father.

4. One claiming title under a child of a slave marriage as against another child of a slave marriage, cannot complain that this court at one time held that a certain statute did not confer inheritable blood upon such offspring and subsequently held that a later statute conferring such rights was retro-active except where vested rights were invaded, where the title of both must stand or fall together.

5. When the title of two daughters of a slave marriage depend entirely upon a statute and a decision of this court, the grantee of one of them will not be heard to complain that the same statute and decision may be void as interfering with rights vested under former decisions.

6. The testimony examined in this case and found to sustain the contention of the appellees that Jane Mungen was the child of a slave marriage and cohabitation, and that she had inheritable blood under Chapter 4749 Acts of 1899.

7. The testimony examined and found not to sustain the contention of the appellants that appellees are barred from sustaining this suit by the alleged laches of the appellees in bringing it.

Appealed from Circuit Court, Duval County; Geo. Couper Gibbs, Judge.

Decree affirmed.

*H. H. Buckman* and *Bisbee & Bedell,* for Appellants;

*N. P. Bryan, J. T. G. Crawford, Baker & Baker, Van C. Swearingen* and *Axtell & Rinehart,* for Appellees.

Hocker, J.—The interest of the Land Mortgage Bank of Florida and Bessie A. Martin were alleged in the bill to be subordinate to the rights of complainants, and a decree *pro confesso* was entered against them. Appellant Thompson filed a motion alleging he was not aggrieved by the final decree, and praying that it be confirmed as to him. The only questions therefore before us are those affecting the rights and interest of John G. Christopher, Julia A. Wilson and H. A. Wilson, her husband, and the McLeans. An answer was filed by appellants, to which there was a replication, and besides the documentary evidence filed, several hundred pages of testimony was taken. On final hearing the court entered the following final decree:

"This cause coming on to be heard, and it appearing to the court that decrees pro confesso have been duly entered against the Land Mortgage Bank of Florida, Limited, of England, a corporation under the laws of England, and Bessie A. Martin, two of the defendants and that the defendants John G. Christopher, Julia A. Wilson, H. A. Wilson, her husband, William A. McLean, William A. McLean, Jr., as Administrator of the estate of William A. McLean, deceased, and William R. Thompson, have filed their answers to the Bill of Complaint ed of England, is not seized of any right, title or interest

herein, and the complainants have filed the replications thereto, and that the parties have taken evidence which has been duly reported to this court, and the court being fully advised in the premises, it is ordered, adjudged and decreed as follows:

1. That the motion of the defendant John G. Christopher, Julia A. Wilson, and H. A. Wilson, her husband, for leave to file an amended answer, which said motion was presented at the time of the final hearing of this cause, be and the same is hereby denied.

2. That the objections of complainants to the evidence offered and filed before the Special Examiner by the defendants, numbered 1 to 25, both inclusive, and 27, 28, 29 and 31, be and the same are hereby sustained.

3. That the objection of complainants to the evidence offered and filed before the Special Examiner, by the defendants, numbered 30, be and the same is hereby overruled.

4. That the objections of the defendants to the evidence offered and filed before the Special Examiner by the complainants appearing on page 1, of the testimony, be and the same are hereby overruled.

5. That the complainants are not entitled to any relief against the defendant William R. Thompson, in this proceeding, and that the Bill of Complaint as to said William R. Thompson be and the same is hereby dismissed without prejudice.

6. That the decree pro confesso heretofore entered in this cause against the defendant, Land Mortgage Bank of Florida, Limited, of England, a corporation under the laws of England, be and the same is hereby confirmed, and that the said Land Mortgage Bank of Florida, Limitin or to the premises hereinafter described, or any part thereof.

7. That the decree pro confesso heretofore entered in this cause against the defendant Bessie A. Martin be and the same is hereby confirmed, and that the said Bessie A. Martin is not seized of any right, title or interest in or to the premises hereinafter described, or any part thereof.

8. That as to the defendant William A. McLean the equities are with the complainants, and that the said William A. McLean is not seized of any right, title or interest in or to the premises hereinafter described, or any part thereof.

9. That as to the defendants John G. Christopher, Julia A. Wilson, and H. A. Wilson, her husband, the equities are with the complainant Jane Mungen; that the complainant Jane Mungen and the defendant John G. Christopher, are each entitled to, and seized and possessed of, one-half of the following described lands, in fee simple, that is to say; all those certain lots, pieces or parcels of land in Duval County, Florida, particularly described as follows: That part of lot or tract three of East Lewisville, according to the map hereinafter referred to, commencing at the Southwest corner thereof and running thence North on the line dividing said tract from blocks four, five and thirty-nine three hundred and eighty-five (385) feet to a stake; thence South 88 degrees 15 minutes East parallel to the south line of said tract three, thirteen hundred fifty (1350) feet, more or less, to Talleyrand Avenue, said Avenue being sixty feet wide; thence southerly along the west side of Talleyrand Avenue to the southeast corner of said tract three; thence westerly along the south line of said tract three to the point of beginning. Also lots one and two in block nine; lots one and two in block ten; lots one, three and four in block thirteen; lots two, three, four, five, six and seven in block

sixteen; lots three and four in block eighteen; lots one and two in block nineteen; lots two, three, four and five in block twenty-one; lots three and four in block twenty-two; the north half of lot one, and lots two, three and four in block twenty-five; lots one and two in block twenty-six; lots one and two in block twenty-seven; lots one, three and four in block twenty-eight; and west fraction of lot four in block twenty-nine; lots one, two and three in block thirty; lots one and four in block thirty-one; and all of block thirty-nine, of East Lewisville, according to map thereof recorded in plat book 1, page 25 of the public records of Duval County, Florida.

It is further ordered, adjudged and decreed that the complainant Jane Mungen and the defendant Julia A. Wilson, wife of H. A. Wilson, are each entitled to and seized and possessed of one-half of the following described lands in fee simple, that is to say; all those certain lots, pieces or parcels of land in Duval County, Florida, particularly described as follows: All of lot or tract three not hereinabove particularly described; and also lots one and two in block thirty-three, lots one, two, three and four in block thirty-four; lots one, two, three and four in block thirty-five; lots one, two, three and four in block thirty-seven; lots one and two in block thirty-eight, of East Lewisville, according to map thereof recorded in plat book 1, page 25, of said public records in Duval County, Florida.

And it is further ordered, adjudged and decreed, that the complainant Jane Mungen, and the defendants John G. Christopher and Julia A. Wilson, wife of H. A. Wilson, are entitled to and seized and possessed of the following described lands, in fee simple, in the proportions of one-half, three-eights and one-eights, respectively, that is to say, all those certain lots, pieces or parcels of land

in Duval County, Florida, particularly described as follows: All that part of the certain subdivision of said county known as East Lewisville, situate in the northeastern part of the City of Jacksonville, Duval County, Florida, lying and being east of the Shell Road or Talleyrand Avenue, according to a map recorded in plat book 1, page 25, of the public records of said Duval County, Florida; and also all of lot four, block twenty-nine, not hereinabove described; lots one, two, three and four of block twenty-three, and the east one hundred twenty-six feet of block twenty-four, of said subdivision, according to said map.

It is further ordered, adjudged and decreed, that a division and partition of said premises be made; that W. R. Sebring, A. W. Palmer and A. C. Ulmer be and they are hereby appointed commissioners to make partition of said premises; that each of said commissioners shall take and subscribe an oath to faithfully and impartially make division and partition of said land in accordance with this decree, if the same can be done without great prejudice to the owners; that said commissioners are ordered to go upon the premises and make partition of said land, assigning to each party his or her share, quality and quantity, respectively, considered, by metes and bounds or other proper description, and that they may employ a surveyor, with necessary assistants, to aid them; and if said commissioners shall find that said premises are so circumstanced that a division thereof cannot be made without great prejudice to the parties in interest, they will report that fact in writing to the court, without delay.

It is further ordered, adjudged and decreed, that the complainants pay to the defendants John G. Christopher, Julia A. Wilson and H. A. Wilson, any or either of them,

complainant, Jane Mungen's proportion of such amount or amounts as they or any of them have legally expended on account of taxes and tax searches, the said amount to be ascertained as hereinafter provided, and when ascertained, to be and remain a lien upon the said lands of the complainant Jane Mungen.

10.   That as to the defendant William A. McLean, Jr., as administrator of the estate of William A. McLean, deceased, the equities are with the complainants and the said defendant has no title to the premises hereinbefore described, or any part thereof.   It is ordered, however, that the complainants do equity by paying to the said defendant such amount as may be found legally due to him, as adimnistrator as aforesaid, by the complainants, after deducting any and all sums received by the said defendant or by his intestate; and that said sum shall be ascertained as hereinafter provided, and when ascertained shall be and remain a lien upon the said lands of the complainant, Jane Mungen.

11.   That the complainants solicitors are entitled to reasonable attorney's fees for their services in this cause; that the amount of said fees shall be ascertained as hereinafter provided, and when ascertained shall be and remain a lien upon all of the hereinabove described premises.

12.   That this cause be and the same is hereby referred to Miles W. Lewis, Esquire, a practicing solicitor of this court, to hear evidence upon the matters set forth in paragraph nine, ten and eleven hereof, and report to this court with all convenient speed.

(a)   The amount, or amounts, if any, which the defendants John G. Christopher, Julia A. Wilson, H. A. Wilson, her husband, or either of them, are entitled to receive under the 9th paragraph hereof.

(b) The amount, or amounts, if any, which the defendant William A. McLean, Jr., as administrator of the estate of William A. McLean, deceased, is entitled to receive under the 10th paragraph hereof.

(c) The amount of attorney's fees to which complainants' solicitors of record are entitled for services rendered herein.

Done and ordered at Chambers at Jacksonville, Duval County, Florida, this 17th day of May, A. D. 1913.

George Couper Gibbs, Judge."

An appeal was taken from this decree.

The first assignment of error alleges that the court erred in not dismissing the bill on five (5) grounds, *viz*:

First, That these appellants acquired their title in reliance upon a line of decisions by the Supreme Court of Florida to the effect that children of slave marriages derived no inheritable blood from their ancestors, which decisions had become a rule of property assuring to these appellants a vested right, the repudiation of which in this cause impairs the obligation of a contract contrary to the Constitution of the United States and deprived these appellants of their property without due process of law contrary to the Fourteenth Amendment to the Constitution of the United States; second, on the ground that the proof failed to show such a status between the mother of Jane Mungen and her father as would give inheritable blood to the issue of that marriage; third, on the ground that the proof showed the property of James Lewis in law to have descended to others than Jane Mungen; fourth, on the ground that the deed to McLean under the peculiar circumstances of Lewis in having no children with inheritable blood carried the title to McLean; fifth, on the ground that plaintiff's claim was barred by laches.

The second assignment of error questions the action of the Circuit Judge denying the motion of the Wilsons and Christopher for leave to file an amended answer at the final hearing to meet the proofs of the cause.

The third assignment questions the action of the Circuit Judge in overruling the objection of the complainants to the evidence offered and filed before the Examiner by the defendants, numbered 30, on the ground that the objection is well taken.

The fourth assignment alleges the court erred in finding the equities with the complainant Jane Mungen, and that complainant Jane Mungen and defendant John G. Christopher are each entitled to, and seized and possessed of one-half of certain lands described in said decree in fee simple; and that Jane Mungen and Julia A. Wilson are each entitled to and seized and possessed of one-half of certain other lands described in the decree in fee simple; and that Jane Mungen and defendants Christopher and Julia A. Wilson are entitled to and seized and possessed of certain other lands described in said decree in the proportion of one-half, three-eights, and one-eight respectively in fee simple; on the grounds alleged in the first of these assignments of error.

The fifth assignment alleges that the court erred in decreeing a division and partition of said lands on the grounds alleged in the first of these assignments of error.

The sixth assignment alleges that the court erred in its finding that complainants' solicitors are entitled to a reasonable attorneys' fee for their services in this cause; on the grounds alleged in the first of these assignments of error, and on the ground that this case is not a proper one for the allowance of attorneys' fees.

We will consider such of these assignments as are presented.

All parties claim under James Lewis, deceased, who was a colored man and an ex-slave.

Under the first ground of the first assignment, the appellants contend they acquqired their title replying upon the cases of Daniel v. Sams, 17 Fla. 487; Adams v. Sneed, 41 Fla. 151, 25 South. Rep. 893, and Williams v. Kimball, 35 Fla. 49, 16 South. Rep. 783. The answer to this contention is that these cases had reference to the statute law as it existed prior to the enactment of Chapter 4749 of the Legislative Acts of 1899. This Chapter is as follows:

"AN ACT to Legalize the Marriages and Offspring of Persons of African Descent.

*Be It Enacted by the Legislature of the State of Florida*:

Section 1. That in all cases where persons of African blood have, prior to January first, A. D. 1866, cohabited and lived together as husband and wife, and have, prior to said date, recognized each other before the world, and were recognized as husband and wife, they shall in law be deemed, taken and held to have been lawful husband and wife so long as such relationship existed between them, as fully and effectually for all purposes as if the marriage between them had been solemnized by a proper officer thereto lawfully authorized; and all children, the issue of any such marriage, are hereby legitimized and made heirs of their parents and of their blood relatives generally in the ascending, descending and collateral lines of inheritance according to the general laws of descent in force in this State, as fully as if they had been born in legally recognized wedlock.

Sec. 2. All laws or parts of laws in conflict with the provisions of this act are hereby repealed, and this act shall take effect immediately upon its passage and approval.

Approved June 1, 1899."

The constitutionality of this act was approved in Johnson v. Wilson, 48 Fla. 76, 37 South. Rep. 179, and its effect was to change the law laid down in Adams v. Sneed, *supra*, and other previous cases. It is therein stated that its clear purpose, object and effect are to make valid customary slave marriages, and to render the children of such marriages capable of inheriting. This decision was rendered at the June Term, 1904, and was adhered to in the previous decision in this case. We are content with this view of the law. When the act of 1899 was passed, these defendants had acquired no vested interest in the property in controversy, so far as the undivided half interest claimed by Jane Mungen is concerned, either by conveyance or adverse possession. We construed the trust deed to W. A. McLean in the previous opinion, and held that his sons acquired no title through that deed. Christopher v. Mungen, 61 Fla. 513, 55 South. Rep. 273; Holmes v. Thompson, 62 Fla. 255, 57 South. Rep. 433. That decision is the law of this case. McKinnon v. Johnson, 57 Fla. 120, 48 South. Rep. 910; Valdosta Mercantile Co. v. White, 56 Fla. 704, 47 South. Rep. 961, and other Florida decisions. The Wilkinsons had no other title except the half interest of their mother Eliza, the sister of complainant. James L. Lewis, a son of James Lewis, is not shown to have been a child by a customary slave marriage. He was the son of Isabella, a child by a temporary connection born while Rhina, the recognized wife of James Lewis, was still living. The defendants claim under conveyances all of which were executed since the Act of 1899 went into effect. Neither this act nor the previous decision in this case had the effect of disturbing or interferring with any vested right of the defendants. Johnson v. Wilson, *supra*.

We will now consider the second ground of the first assignment of error, *viz*: that the proofs failed to show such a status between the mother of Jane Mungen (Viney) and the father (James Lewis) as would give interhitable blood to the issue of that marriage. After examining the testimony of all the witnesses who testified as to the relations existing between James Lewis and Viney, we think the clear preponderance of the evidence shows that James Lewis and Viney were married according to the slave custom; that the marriage ceremony was performed by the master in his house; that Viney was married to Lewis about 1850; that she was generally regarded as his wife by those who knew them; that Jane Mungen was the only child of that marriage; that Viney died from the effects of a burn when Jane was a small child; that Lewis was after her death married to Rhina who became the mother of Eliza, who became mother of the Wilkinson brothers, whose conveyances figure in this case. Two or three witnesses say that Rhina was married to Lewis before he was connected with Viney, but a very much larger number of witnesses testify to the contrary, and it would certainly have been a very unusual thing for the master to have countenanced the marriage to Viney as one witness says he did, while Rhina, a former wife of Lewis was then living. It is a well known fact that the better class of masters encouraged permanent domestic relations among their slaves either from motives of morality or from the economic one, that the children of such permanent relations were better cared for than those of casual alliances, and generally made better servants. We have no doubt from this evidence that Jane Mungen was older than Eliza, and was a child of customary slave marriage such as is

contemplated by the act of 1899. The fact that James Lewis was not always a faithful husband and sometimes seems to have had temporary relations with other women does not disprove this fact.

The third ground of the first assignment is that the proofs show the property of James Lewis descended to others than Jane Mungen. In view of the fact that the bill admits and alleges that a half interest in his property descended to his daughter Eliza, this assignment is indefinite. In the brief of appellants it is contended that at the death of James Lewis in 1894 without children who could inherit from him, his whole estate under the law of descents passed to his widow Elizabeth. We do not feel called upon to discuss this contention further than to say that the proofs do not change the situation with reference to Elizabeth from what it was when the former opinion in this case was rendered; secondly, no such defense is presented in the answers of defendants, and, thirdly, it does not appear that the defendants, or either of them, claim title either under any conveyance from Elizabeth except through the trust deed to McLean, or under any grantee, or heir or devisee of heirs. If there be such persons they are not parties to this suit. The rights of Jane Mungen, the complainant, in the lands are equal to those of Eliza L. Lewis under whom the defendants claim, both Jane and Eliza being children of James Lewis by recognized slave marriages and cohabitation, who are by the same statute made equal heirs of their father.

The fourth ground of the first assignment is that the deed to McLean under the peculiar circumstances of Lewis having no children with inheritable blood carried the title to McLean. It seems to us that any discussion

of this ground is unnecessary, for in the former opinion we construed the trust deed to McLean as being an unexecuted personal power of sale, and that construction is the law of this case, and we find from the evidence that James Lewis did leave children who under the Statute of Florida, have inheritable blood. As expressly decided in former opinions the trust deed or power of sale covering the land given by James Lewis to McLean carried no title or estate to the heirs of McLean upon his death; but the beneficial interest in the land passed to the heirs of James Lewis.

The fifth ground of the first assignment is that complainants claim is barred by laches. The application of the doctrine of laches will depend upon the facts and circumstances of each case. Anderson v. Northrop, 30 Fla. 612, 12 South. Rep. 318. The cases of Murrell v. Peterson, 57 Fla. 480, 49 South. Rep. 31, and Pinney v. Pinney, 46 Fla. 559, 35 South. Rep. 95, and other cases cited are unlike those of the case at bar. This is an unusual case. Laches is pleaded in the answer of defendants as an affirmative defense, and the burden of proof is on them, for if no proof on this point were offered at all, the issue would be with the complainant. To meet this issue appellants "claim that they acquired title to the property through conveyances from the McLeans, from James L. Lewis the alleged son of James Lewis by Isabella, and from Eliza, the daughter of James Lewis by Rhina, and from her sons, the Wilkinsons, they claiming to be the only heirs of James Lewis, in and by notice of a certain claim to recover said property set up by them on the chancery side of the court, which bill was duly sworn to, and which said proceedings were to the exclusion of any claim of *this complainant,* and that this

31—Vol. 66

complainant did not then and there at any time, either before or since the bringing of this suit make herself a party to such proceeding, or set up or make known her said alleged claim, although she well knew that such proceedings were taking place, and that she stood by and remained quiet until the present time allowing these defendants and their grantors to make said purchase, to expend their money, etc., and yet she lived and resided all the said time in said Duval County and within a short distance of the property involved." We do not think these allegations are sustained by the proofs in these essential particulars. Jane Mungen is an uneducated negro woman, can neither read nor write, and is not shown to have had the slightest knowledge of the law suit referred to. She was not a party to it. It does not appear that defendants were lulled into a sense of security and induced to place valuable improvements on the property, for the evidence shows no improvements of any value. The defendants put up some fencing. It is not shown with certainty when this was done, or what kind of fence was constructed. It is not shown that any of it was a "substantial enclosure," nor what it cost. A small house was built, but it does not appear to have been occupied nor when it was built, probably, according to Mr. Christopher's testimony, within a year or two from the 20th of September, 1904, the date of his deed. It does not appear what this house cost. For a year or two there was some trucking done on the property, but so far as his testimony shows, there has been no continuous and notorious adverse occupation of the property by appellants or those under whom they claim, for seven, or even three years, immediately before the bringing of this suit. Mr. Wilson testified that little or no improvement

had been made on the property since he purchased it (1902), and it does not appear that any one has lived on it in several years.

Mack Wilkinson testified for defendants that he did not regard Jane as interested in this property, although he knew she was James Lewis' daughter; that he had talked with her about a settlement he made with Mr. Wilson for his interest in the property about three or four years before he testified, though he was very indefinite as to the time. He says that his grandfather had the land under fence, except the part he used for wood; that since his death his brother put up some fencing; that the last three or four years Mr. Christopher had built a house and a little piece of fencing. He was asked about the condition of the property since his grandfather's death, said it was not then grown up as it is now. Q. Outside of that is it all the same now? A. When he first settled there? Q. Oh, no, since he died has there been any change in the property in the cultivation of it, or buildings upon it? A. Well the only cultivation as I told you was when my brother farmed it two years after the old man died. Q. Outside of that has there been any change? A. No, there has not been any cultivation on it. He qualified his statement by saying "Mr. Christopher had a little house on the east side of the road, and an old man had a little truck farm, but it was not cultivated back." Mr. Christopher testified that he rented a little of the land to two old soldier for two seasons.

It is not shown that Jane Mungen's home while in Jacksonville was so near this property that she could see it frequently. She may have done so, but it is not shown. It would seem she might well rely upon her nephews, the Wilkinsons, to look after and take care of

the property, in the absence of any knowledge they were hostile to her. She was examined as a witness by the appellants and was asked "from whom did you get your first information that the Wilkinsons had sold this property to Mr. Wilson?" She answered, "Wilson came to my house and told me that it was rumored about some one wanted to buy some land and I heard it rumoring about, but I knew when the boys sold the property, and Mr. Malloy, my groceryman went down and I met Mack (Wilkinson) and he told me it was settled. I came on back; it run on through for three or four years I reckon, then I heard of Wilson's going in possession; some one went out. I think Adam Gibbs pointed them out to me, and I did'nt know the boys had soaked it all until Wilson came there and said he owned it." This is all the testimony there is as to actual knowledge by Jane Mungen of the claim of Mr. Wilson. When she received this information does not clearly appear.

There is no contention that appellants have had adverse possession under color of title for seven years under Section 1721 General Statutes of 1906, defining title by adverse possession under color of title. We do not think it would be equitable under the circumstances of this case to apply the doctrine of laches to the claim of Jane Mungen.

The second assignment of error challenges the action of the Circuit Judge denying the application of the defendants to file an amended answer at the final hearing. This amended answer in effect alleges that the only legal slave marriage of James Ross, known since the civil war as James Lewis, was with Rhina, and that her daughter Eliza was the first and only heir of said James Lewis, if he had any legal heir, to the exclusion of complainant,

which precludes a recovery by the latter. This attempted amendment is inconsistent with the 24th paragraph of the original answer, in which it is alleged that Lewis' relations with Rhina and Viney was not of such a character as to constitute the status of marriage, and that his offspring from his cohabitation with these women had no inheritable blood. We understand that an answer in chancery should be certain as far as practicable, and to so much of the bill as it is necessary to answer, the defendant must speak directly, without evasion, and not by way of negative pregnant. He must confess or traverse the substance of each charge or material allegation positively, and with certainty, if the facts are within his knowledge, or on his information and belief. The defendant cannot shelter himself behind equivocal, evasive or doubtful terms. 1 Ency. Pl. & Pr. 877. The answer, if this amendment had been allowed, would certainly not have been certain or definite as to the relationship of James Lewis and his daughters. Furthermore we do not think that upon a fair consideration of the evidence the allegations of the attempted amendment to the answer are sustained. A good many witnesses testified that Viney was married to James Lewis before he married Rhina, and that Jane Mungen, the daughter of Viney, was older than Eliza, the daughter of Rhina. Jane Mungen who had no reason to testify falsely upon the point, says that she lived with Rhina and Eliza; that the latter was about two years younger than the witness. She also says that Rhina was her father's second wife, and that her own mother, Viney, died when she was very small. We think that she is supported in these statements by the preponderance of the evidence. That James Lewis repeatedly spoke of Jane as his daughter, and that she

SUPREME COURT OF FLORIDA.

nursed him in his last illness, there can be no question from the testimony. Under these circumstances we discover no error in the ruling of the Circuit Judge denying the application to file the amended answer.

A good deal is said in the brief of appellants about the statutes of Limitations, but the answer does not set up any special statute of limitations, whether it be of three, four or seven years, and there is no assignment of error based upon them. We do not therefore feel called upon to discuss them.

The sixth assignment questions the action of the court in allowing complainants' solicitors reasonable attorneys' fees. It seems to us that this was authorized by Section 1946 Gen. Stats. of 1906, which need not be quoted here.

The remaining assignments of error which are argued are covered by what we have said of those we have considered.

We find no reversible error in the record, and the decree appealed from is affirmed.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND WHITFIELD, J. J., concur.