ADDIE PAYNE *et al., Appellants,* v. CHARLES H. PAYNE, *Appellee.*

Opinion Filed August 13, 1921.

1. Enabling statutes designed to give rights of inheritance to the innocent offspring of slave cohabitations that were not forbidden by law, should be liberally construed to carry out the beneficient public policy of the State.

2. Statutes must be so construed as to give effect to the evident legislative intent, even if the result seems contradictory to rules of construction and the strict letter of the statute; par-ticularly does this rule apply when a construction based upon the strict letter of the statute would lead to an unintended result that defeats the evident purpose of the legislature.

3. Statutes should be so applied as to effectuate the lawmaking intent and purpose.

4.    Section 3945 Rev. Gen. Stats. 1920, makes the children of
      slave marriages capable of inheriting from their parents,
      where such children are the issue of a cohabitation as hus-
      band and wife prior to January 1st, 1866; and the descend-
      ants of such children may inherit through their parents
      under the statute of descents.

An Appeal from the Circuit Court for Leon County;
E. C. Love, Judge.

Reversed.

*Jos. A. Edmondson,* for Appellants;

*Fred H. Davis,* for Appellee.

WHITFIELD, J.—In a decree dismissing a bill for parti-
tion the Chancellor made the following rulings:

''This cause came on for final hearing upon the pleadings
and the master's report of the evidence submitted and
taken before him and was argued by counsel for the re-
spective parties.

''This is a suit for the partition of certain real estate
owned by one Tobias Payne, a negro who died intestate,
leaving him surviving one son, the defendant, Charles H.
Payne, and, as complainants allege, two grand-children, the
said complainants, the children of one Fenton Payne, who
complainants contend, was the son of Tobias Payne, by one
Sarah, who died prior to 1866. The evidence on behalf of
the complainants show that at different times and to differ-
ent persons, the said Thomas Payne, in his life time, ad-
mitted and declared that he had married the said Sarah,
'in slavery time,' according to the custom of marriage
between slaves, and that Fenton was borne of such mar-

riage, and that after slaves were emancipated in this State, the said Tobias recognized the said Fenton as his son.

"Complainants base their claim to the property in question upon the provisions of Sec. 2586 Gen. Stat., by which it is declared that, 'In all cases where persons of African blood, have prior to January 1st, A. D. 1866, cohabited and lived together as husband and wife, and have prior to said date recognized each other before the world, and were recognized as husband and wife,' the offspring of such marriage are legitimized. In order to legitimize the children of such union, the statute does not provide that a ceremonial marriage shall be proven; but it does require three things to be shown: 1st. Cohabitation as husband and wife. 2nd. Recognition of each other before the world as husband and wife; and, 3rd, Recognition as such, by others, or repudiation as such, in anology to the rule of evidence affording or raising the presumption of a legitimate marriage. As slave marriages, as such, were invalid, and the offspring lacking in inheritable blood, until the Legislature of the State provided otherwise, and as the statute in question is in derogation of the common law, and therefore strictly to be construed; and, as there is no evidence that the cohabitation of Tobias and Sarah was recognized by others, to be that of husband and wife, therefore it seems to the Court that the complainants have failed to prove their right of inheritance from Tobias."

The statute to be applied is as follows:

"In all cases where persons of African blood have, prior to January first, A. D. 1866, cohabited and lived together as husband and wife, and have prior to said date, recognized each other before the world, and were recognized as husband and wife, they shall in law be deemed, taken and

held to have been lawfully husband and wife so long as such relationship existed between them, as fully and effectually for all purposes as if the marriage between them had been solemnized by a proper officer thereto lawfully authorized; and all children, the issue of any such marriage, are hereby legitimized and made heirs of their parents and of their blood relatives generally in the ascending, descending and collateral lines of inheritance according to the general laws of descent in force in this State, as fully as they had been born in legally recognized wedlock.'' Sec. 2586 Gen. Stats. 1906, Sec. 3945 Rev. Gen. Stats. 1920.

Enabling statutes designed to give rights of inheritance to the innocent offspring of slave cohabitations that were not forbidden by law, should be liberally construed to carry out the beneficent public policy of the State. Christopher v. Mungen, 61 Fla. 513, 55 South. Rep. 273; Christopher v. Mungen, 66 Fla. 467, 63 South. Rep. 923; Christopher v. Mungen, 71 Fla. 545, 71 South. Rep. 625. See also Johnson v. Wilson 48 Fla. 76; Hadley v. City 67 Fla. 436.

Statutes must be so construed as to give effect to the evident legislative intent, even if the result seems contradictory to rules of construction and the strict letter of the statute; particularly does this rule apply when a construction based upon the strict letter of the statute would lead to an unintended result that defeats the evident purpose of the Legislature. Knight & Wall Co. v. Tampa Lime Brick Co., 55 Fla. 728, 46 South. Rep. 285.

Statutes should be so applied as to effectuate the lawmaking intent and purpose.

The purpose of the statute being to give a right of inheritance to all the children of persons of African blood who prior to January 1, 1866, cohabited and lived together as

husband and wife, where such children are the issue of such cohabitation; and the law does not intend that the right shall depend upon proof of express recognition by others of the cohabitation as husband and wife, if the stated cohabitation in fact existed and the child is the issue of that cohabitation. It is manifest that the decision of the chancellor was the result of a misapprehension of the comprehensive and liberal purpose and intent of the statute. The use of the word "and" in the statute is not intended to make the elements of proof conjunctive or interdependent. See United States v. Fisk, 3 Wall. (U. S.) 445, 18 L. Ed. 243; 25 R. C. L. p. 977; 2 C. J. 1339; 36 Cyc. 1123.

Reversed.

BROWNE, C. J., AND TAYLOR, J., concur.

ELLIS AND WEST, J. J., dissent.

ELLIS, J., Dissenting.—I think there is evidence sufficient to support the decree that there was no slave marriage between Tobias and Sarah.

WEST, J., Dissenting.—There is direct conflict in the evidence in this case upon a question of fact, namely, whether there was such a marriage as the statute recognizes between the parents of complainants' father. If there was not such a marriage complainants' father possessed no inheritable blood, could not inherit any interest in the property and complainants acquired none upon the death of their father and grandfather. Considering this controverted question of fact, the Court held that complainants "have failed to prove their right of inheritance" and

dismissed the bill. Upon the familiar principle that the findings of the chancellor on questions of fact should not be disturbed by an Appellate Court unless such findings are clearly shown to have been erroneous, the decree appealed from in this case should be affirmed because there is sufficient evidence in the record to support the decree. This, it seems to me, is the controlling question, and the question of the construction of the statute is not necessarily involved.