James Yaeger Lee County Attorney Ft. Myers
QUESTIONS:
1. May a county use the tax revenues from the tourist development tax solely for the maintenance of existing publicly owned and operated facilities which meet the statutory designation of s.125.0104(5)(a)1., F. S.?
2. If the answer to the above is in the negative, to what extent may a county use the tourist development tax revenues for maintenance of existing publicly owned and operated facilities which meet the statutory designation of a convention center, sports stadium, sports arena, coliseum, or auditorium as designated in s. 125.0104(5)(a)1., F. S.?
3. To what extent may a county use the tax revenues to acquire, construct, extend, enlarge, repair, improve, maintain, operate, or promote publicly owned and operated parks or beaches?
SUMMARY:
Lee County may use tax revenues from the tourist development tax solely for the maintenance of existing publicly owned and operated facilities meeting the requirements of the statutory designations set out in the Local Option Tourist Development Act. Expenditure of tourist development tax revenues is authorized for the maintenance of existing publicly owned and operated facilities, such as convention centers, sports stadiums, coliseums, or auditoriums within the boundaries of the county, and may not be used under existing law for publicly owned and operated parks or beaches or their promotion.
Your first question draws into account a change made by the Division of Statutory Revision. The local option tourist development tax was enacted as Ch. 77-209, Laws of Florida. In several subparagraphs of s. 5 of Ch. 77-209, the Legislature spelled out the authorized uses of tourist development tax revenues. Among such uses were those included in s. 5(1)(a) which provided:
 To acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, and promote, one or more publicly owned and operated convention centers, sports stadiums, sports arenas, coliseums or auditoriums within the boundaries of the county or subcounty special taxing district which approved the ordinance levying and imposing the tax by referendum pursuant to section 6 of this act; provided, however, these purposes may be implemented through service contracts and leases with persons who maintain and operate adequate existing facilities. (Emphasis supplied.)
In compiling the 1977 edition of the Florida Statutes, the Division of Statutory Revision placed the aforecited provision as part of s. 125.0104(5)(a)1., F. S., but changed the word `and' to `or' so that the statute reads in pertinent part:
 To acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, [or] promote one or more publicly owned convention centers, sports stadiums, sports arenas, coliseums, or auditoriums within the boundaries of the county or subcounty special taxing district . . . . (Emphasis supplied.)
The Division of Statutory Revision is empowered by s.11.242(5)(h), F. S., in preparing the Florida Statutes for publication, to correct `grammatical, typographical and like errors' and to make `additions, alterations and omissions,' all of which, however, are not to affect `the construction or meaning of the statutes or laws.' In discussing changes made by the Division of Statutory Revision, the First District Court of Appeal in Coulter Electronics, Inc. v. Department of Revenue, Case No. JJ-235, Opinion filed Dec. 29, 1978 (1 D.C.A. Fla., 1978), noted that if in compiling the Florida Statutes from the session laws a change of a substantive nature is made in such session laws by the division, such change is beyond any power vested in the division, and the session law would continue to control until such Florida Statutes are codified as the official statute law of the state pursuant to s. 11.2421, F. S. Cf. Shuman v. State, 358 So.2d 1333
(Fla. 1978), in pertinent part holding that, until the Statutory Revision Division's publication of the statutes of this state is adopted by the Legislature, such publication constitutes only prima facie evidence of the law and the act of the Legislature stands as the official primary evidence of the law as enacted by the Legislature.
Consequently, your first question draws into issue whether the Division of Statutory Revision's change of the term `and' to `or' in s. 125.0104(5)(a)1., F. S., is a change substantive in nature so as to make the session law, Ch. 77-209, Laws of Florida, controlling until the 1977 volume of the Florida Statutes is officially adopted during the 1979 session of the Florida Legislature.
The particular rule of statutory construction governing this matter is enunciated in Payne v. Payne, 89 So. 538, 539 (Fla. 1921), wherein it was stated:
 Statutes must be so construed as to give effect to the evident legislative intent, even if the results seem contradictory to the rules of construction and the strict letter of the statute; particularly does this rule apply when a construction based upon the strict letter of the statute would lead to an unintended result that defeats the evident purpose of the legislature.
Applying this rule, the Florida Supreme Court determined that the use of the term `and' in a statute should be read `or,' holding:
 It is manifest that the decision of the chancellor was the result of a misapprehension of the comprehensive and liberal purpose and intent of the statute. The use of the word `and' in the statute is not intended to make the elements of proof conjunctive or interdependent.
In Pinellas County v. Woolley, 189 So.2d 217, 219 (2 D.C.A. Fla., 1966), it was noted that Florida and other jurisdictions:
 . . . have also acknowledged this rule of construction that the words `or' and `and' may be interchanged when it is required to effectuate the obvious intention of the legislature and to accomplish the purpose of the statute.
See also Pompano Horse Club v. State, 111 So. 801 (Fla. 1927), and Dotty v. State, 197 So.2d 315, 317 (4 D.C.A. Fla., 1967).
In light of the above rules of statutory construction, it is, therefore, necessary to determine the legislative intent relative to the authorized expenditures of tourist development tax revenues. Utilization of the term `and' as it is found in s. 5(1)(a) of Ch. 77-209 would provide that the tourist development tax may be expended only to acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, `and' promote one or more publicly owned and operated convention centers, sports stadiums, sports arenas, coliseums, or auditoriums. That is, if the conjunctive `and' is used, the tourist development tax revenues could only be expended where all of the purposes enunciated in s. 5(1)(a) of Ch. 77-209 are present. Since it is an evident impossibility to acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, and promote publicly owned convention centers, etc., at the same time, utilization of the term `and' in its conjunctive sense would lead to an irrational result totally at odds with the evident legislative intent.
Utilization of the disjunctive `or,' on the contrary, would lead to a rational result clearly in keeping with legislative intent which would authorize the county or subcounty special taxing district to expend tourist development tax revenues for any one or more of the purposes enunciated in s. 5(1)(a) of Ch. 77-209 (s.125.0104[5][a]1., F. S.).
It, therefore, would clearly appear that the utilization of the term `or' in s. 125.0104(5)(a)1., F. S., which term effectuated a change from the use of the term `and' in s. 5(1)(a) of Ch. 77-209, is not substantive in nature and is properly within the scope of the powers, duties, and responsibilities of the Division of Statutory Revision. See Coulter Electronics, Inc. v. Department of Revenue, supra. Accordingly, your first question is answered in the affirmative, and the tax revenues in question may be lawfully used solely for the maintenance of existing publicly owned and operated facilities meeting the requirements of the statutory designations.
Because of the affirmative answer to question 1, question 2 posed at the outset of this opinion is rendered moot.
Your third question inquires as to what extent the county may use tourist development tax revenues to acquire, construct, extend, enlarge, repair, improve, maintain, operate, or promote publicly owned and operated parks or beaches. The resolution of this question in turn depends upon a construction of s. 125.0104(5), F. S., which delineates the authorized uses of the tourist development tax revenues. That section provides:
(5) AUTHORIZED USES OF REVENUE. —
 (a) All tax revenues received pursuant to this section by a county imposing the tourist development tax shall be used by that county for the following purposes only:
 1. To acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, [or] promote one or more publicly owned and operated convention centers, sports stadiums, sports arenas, coliseums, or auditoriums within the boundaries of the county or subcounty special taxing district which approved the ordinance levying and imposing the tax by referendum pursuant to subsection (6). However, these purposes may be implemented through service contracts and leases with persons who maintain and operate adequate existing facilities;
 2. To promote and advertise tourism in the state of Florida and nationally and internationally; or
 3. To fund convention bureaus, tourist bureaus, tourist information centers, and news bureaus as county agencies or by contract with the chambers of commerce or similar associations in the county.
 (b) In any county in which the electors of the county or the electors of the subcounty special tax district have approved by referendum the ordinance levying and imposing the tourist development tax, the revenues to be derived from the tourist development tax may be pledged to secure and liquidate revenue bonds issued by the county for the purposes set forth in paragraph (1)(a). (Emphasis supplied.)
While two of the subparagraphs of s. 125.0104(5), F. S., authorize the expenditure of tourist development tax revenues to `promote and advertise tourism' and to `fund convention bureaus, tourist bureaus, tourist information centers, and news bureaus,' s.125.0104(5)(a)1. authorizes the expenditure of tourist development tax revenues only to acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, or promote the enumerated publicly owned and operated facilities.
In Brooks v. Anastasia Mosquito Control District, 148 So.2d 64 (1 D.C.A. Fla., 1963), it was stated:
 In statutory construction it has been consistently held that statutes must be given their plain and obvious meaning. It must be assumed that the legislature of this state must know the plain and ordinary meaning of the words . . . .
In Thayer v. State, 335 So.2d 815, 817 (Fla. 1976), the court stated:
 The law clearly requires that the legislative intent be determined primarily from the language of the statute because the statute is to be taken, construed and applied in the form enacted. Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693
(1918); Vocelle v. Knight Bros. Paper Co., 118 So.2d 664
(Fla. 1st D.C.A. 1960). The reason for this rule is that the Legislature must be assumed to know the meaning of words and to have expressed its intent by the use of the words found in the statute.
 It is, of course, a general principle of statutory construction that the mention of one thing implies the exclusion of another; expressio unius est exclusio alterius. Hence, where a statute enumerates the things on which it is to operate, or forbids certain things, it is ordinarily to be construed as excluding from its operation all those not expressly mentioned.
See also Ideal Farms Drainage District, et al. v. Certain Lands,19 So.2d 234 (Fla. 1944); Dobbs v. Sea Isle Hotel, 56 So.2d 341
(Fla. 1952); and Interlachen Lakes Estates, Inc. v. Snyder,304 So.2d 433 (Fla. 1973).
Application of these principles of statutory construction leads to the conclusion that publicly owned and operated parks or beaches are not a lawful and proper subject for expenditure of tourist development tax revenues under the provisions of s.125.0104(5)(a)1., F. S.
Pursuant to s. 125.0104(5)(a)2. and 3., F. S., the county is empowered to spend tourist development tax revenues to promote andadvertise tourism in this state as well as nationally and internationally, and to fund convention bureaus, tourist bureaus,tourist information centers, and news bureaus as county agenciesor by contract with the chambers of commerce or similar associations in the county. Neither of these subparagraphs mentions `acquire, construct, extend, enlarge, repair, improve, maintain, or operate' in connection with the maintenance and operation of public parks or beaches. Thus, whether tourist development tax revenues can be utilized to promote publicly owned and operated parks and beaches pursuant to s. 125.0104(5)(a)2. and 3. depends on the common and ordinary meaning of the terms employed in those subparagraphs.
Under s. 125.0104(5)(a)2., F. S., if the county uses a portion of the taxes `to promote and advertise tourism' and if, as a component part of any such advertisement and promotion of tourism, the publicly owned and operated parks and beaches are also, or as an incident thereof, `promoted,' then to that extent such use is authorized by subparagraph (a)2.
Under s. 125.0104(5)(a)3., F. S., the funding of convention bureaus, tourist bureaus, tourist information centers, or news bureaus, either as agencies of the county or by contract with the chambers of commerce or similar associations in the county, can hardly be said to embrace or comprehend the promotion of publicly owned and operated parks or beaches specified in your question. The designated bureaus, centers, agencies, or chambers of commerce could indirectly advertise and promote the parks and beaches by passing on information about the same through brochures, etc., but the county could not directly spend any tourist development tax revenues to `promote' such parks and beaches.
In summary, therefore, it is my conclusion that tourist development tax revenues may be used solely for the maintenance of existing publicly owned and operated facilities expressly mentioned under s. 125.0104(5)(a)1., F. S. Tourist development tax revenues may not be used for publicly owned and operated parks or beaches under the provisions of s. 125.0104(5)(a)1., as such facilities and not expressly mentioned thereunder. Further, the county may not directly spend tourist development tax revenues to promote said parks or beaches under s. 125.0104(5)(a)2. and 3., but any incidental promotion of said parks and beaches as a result of expenditures of said revenues pursuant to s. 125.0104(5)(a)2. and 3. would be authorized and proper.
Prepared by:
Cecil Davis Assistant Attorney General