THE KNIGHT & WALL COMPANY, A CORPORATION OF FLORIDA, AND THE HILLSBOROUGH GROCERY COMPANY, A CORPORATION OF FLORIDA, *Appellants,* v. TAMPA SAND LIME BRICK COMPANY, A CORPORATION, OF FLORIDA, L. W. SMITH, JOHN B. MOODY, B. F. BRYD, C. E. ALLEN, W. B. HENDERSON, GEORGE C. WARREN, M. JETTON, LEE DEKLE, T. N. HENDERSON, FRED T. WARREN, C. ELMER WEBB, D. O. FULTON, ADAM KATZ, JOHN H. DREW, E. V. WHITAKER, W. E. JOHNSON, GORDON KELLER, ROBERT KELLER, JOHN SAVARESE, SAMUEL ESSRIG, FRED R. BERRY, MORRIS CRACOWANER, OTTO P. STALLINGS, ASIAS GOTTESMANN, A. C. MOORE, J. T. NEFF, D. AFREMOW, T. J. O'NEAL AND W. G. PARSCHALL, *Appellees.*

CORPORATION LAW—STOCKHOLDERS LIABILITY TO CREDITORS OF CORPORATION—WHEN CREDITORS MAY PROCEED AGAINST STOCKHOLDERS—WHAT CONSTITUTES SUBSCRIPTION TO STOCK —BONUS STOCK ISSUED WITHOUT PAYMENT—SECTIONS 2677 AND 2681 GENERAL STATUTES OF 1906 CONSTRUED—INTERPRETATION OF STATUTES—COURTS OF EQUITY MAY ENFORCE LIABILITY OF STOCKHOLDERS.

1. While the general rule is well established that a corporate creditor's suit to enforce payment of unpaid subscriptions to

its stock can properly be brought only after a judgment at law has been obtained against the corporation and an execution returned unsatisfied for lack of corporate property upon which to levy, yet this rule has its exceptions, and one of these exceptions to the rule is that when the corporation has been adjudged a bankrupt, or is notoriously insolvent, or has been dissolved, then the creditor's remedy against the corporation need not first be exhausted.

2. The *dissolution* of a corporation, that will enable its creditors without exhausting their legal remedies against the corporation, to proceed against its stockholders to enforce the payment of their unpaid subscriptions for stock, takes place when the corporation comes into the condition of having debts and no assets, or has ceased to act and exercise its corporate functions, or has suffered acts to be done that end the object for which it was created.

3. The liability of stockholders, on the insolvency or dissolution of the corporation, for the full amount represented by the unpaid stock, extends to persons to whom stock has been issued gratuitously as an inducement to purchase bonds of the corporation, even though the certificates therefor may recite that such stock is fully paid up, since their acceptance and holding of the stock is, in legal effect, a subscription therefor which imports a promise to pay. An agreement between a corporation and its stockholders by which the corporate stock is issued to them gratuitously, is void because contrary to law, and does not relieve the parties to whom it has been so issued from liability to the corporation's creditors to pay for the same.

4. The rule is well settled that when a corporation is insolvent, or has been dissolved, and there exist subscriptions for stock that have not been fully paid, a court of equity will disregard the formality of a call, and will order the unpaid subscriptions to be paid to a receiver for the benefit of the corporate creditors, or such court may, in its discretion, require its receiver to make and enforce a call upon the stockholders for such unpaid subscriptions.

5. Statutes must be so construed as to give effect to the evident legislative intent, even if the result seems contrary to rules of construction and the strict letter of the statute; particularly does this rule apply when a construction based upon the strict

letter of the statute would lead to an absurd result that defeats the evident purpose of the legislature.

6. The purpose and intention of the legislature in the enactment of section 2677 General Statutes of 1906 was to fix and impose upon stockholders in corporations a liability to its creditors, upon the insolvency of the corporation, to the extent of any balance that remains unpaid upon the stock by them subscribed for or held, at its par or face value; and the latter part of said section was designed to exempt the stockholders' property from liability for any of the corporation's debts, *except the debt due by the stockholders for the unpaid subscriptions to the corporation's capital stock.* Section 2681 of the General Statutes of 1906 contains nothing that militates against this construction of section 2677, but should itself be construed in harmony with such construction of that section.

7. Forbearance to enforce a debt due by one party is a recognized consideration sufficient to support an obligation by a third party to pay such debt.

This case was decided by Division B.

Appeal from the Circuit Court for Hillsborough County.

*Statement.*

On the 12th day of July, 1907, the appellants, as complainants below, filed their bill of complaint in equity in the circuit court for Hillsborough county against the above named appellees as defendants below, which bill, omitting its formal commencement, alleges as follows:

"1st. That your orators prior to the filing of this bill, to-wit, on the 12th day of July, A. D. 1907, have instituted their suits at law in this Honorable Court against the above named defendant, the Tampa Sand Lime Brick Company, to recover certain large indebtedness due them by the said defendant, to-wit, the sums of twenty-two hundred dollars, and twelve hundred dollars, respectively, and the said suits for the collection of the said claims are now pending in the said court.

2nd.    That heretofore, to-wit, on July 23rd, A. D. 1904, certain of the defendants hereto procured from the governor of the state of Florida a charter incorporating them and their associates as a body corporate under the name of Tampa Sand Lime Brick Company, the defendant herein, and after obtaining the said charter proceeded to organize as a corporation under that name, and thereafter, to-wit, on the————day of August, A. D. 1904, duly filed and procured to be recorded their said charter of incorporation in the office of the clerk of the circuit court of Hillsborough county, Florida, wherein was and is located the principal place of business of the said corporation, and also procured and made to be filed with the secretary of state of the state of Florida, and the clerk of the circuit court of Hillsborough county, Florida, duplicate affidavits by the treasurer of said corporation that ten per cent. of its capital stock had been subscribed and paid, all of which will more fully appear by reference to true copies of the said charter and of the said affidavits, as the same appear of record in the office of the clerk of the circuit court of Hillsborough county, which are hereto attached, marked respectively Exhibit 'A' and Exhibit 'B' hereto, and hereby made by reference a part of this bill of complaint.

3rd.    That the capital stock of the said Tampa Sand Lime Brick Company as fixed by the said charter amounted to the sum of fifty thousand dollars, divided into five hundred shares of the par value of one hundred dollars each, and the various defendants hereto became subscribers to the said shares of capital stock of the said corporation in proportions unknown to your orators, but your orators aver that the said individual defendants hereto subscribed for substantially the entire five hundred shares of the said capital stock, and that certificates for the said issue of stock were issued to the said defendants in proportions unknown to your orators.

4th.    That while the said Tampa Sand Lime Brick Company caused and procured an affidavit to be filed with the clerk of the circuit court wherein it was averred that ten per cent. of its capital stock had been actually subscribed and paid, your orator alleges it to be a fact that the said shares were allotted and issued to the said respective defendants without the said defendants or any of them paying therefor in cash or otherwise, and the said defendants, neither at the time of the issuance of the said shares to them respectively, nor since, have paid to the said Tampa Sand Lime Brick Company any money whatever for the said shares of stock so issued to them or paid for the said shares in any other manner whatever.

5th.    That your orators are informed and believe that the transaction between the said Tampa Sand Lime Brick Company and the said respective defendants hereto in connection with the issuance to them of the said shares of stock was as follows: After procuring the said charter certain of the said defendants were elected directors and officers of the said Tampa Sand Lime Brick Company, and they resolved and determined to issue the bonds of the said Tampa Sand Lime Brick Company to an amount equivalent to thirty thousand dollars and to execute for the security of the said bonds a mortgage or deed of trust embracing all the property of the said corporation then in existence or thereafter to be acquired, and including its franchises with the agreement and understanding that parties accepting the said bonds at par should receive in addition as a bonus and without any consideration whatever an amount of stock of the said Tampa Sand Lime Brick Company equivalent to the amount of bonds so taken by them.

6th.    And your orators allege that in pursuance of the agreement and understanding set forth in the preceding paragraph of this bill of complaint the respective

individual defendants hereto agreed to accept and did accept and paid for at their par value bonds of the said Tampa Sand Lime Brick Company aggregating the sum of thirty thousand dollars in proportions unknown to your orators, and that the said respective individual defendants received as a bonus in proportion to the amount of bonds taken by each an equivalent amount in stock of the said Tampa Sand Lime Brick Company without the payment therefor of any price or consideration whatsoever, and that the said stock so issued and allotted to the said respective individual defendants is still held by them respectively; and your orators further aver that they are informed and believe that additional stock to the amount of about fifteen thousand dollars at par value was divided among certain of the defendants hereto as an additional bonus and without any consideration whatsoever.

7th. That thereafter the said Tampa Sand Lime Brick Company became financially embarrassed and after various defaults in the payment of interest on the bonds so issued to the said respective defendants, the trustee named in the said deed of trust which had been given to secure the same under the agreement aforesaid, to-wit, the Citizens' Bank and Trust Company, a corporation, on December 28th, 1906, filed its bill of complaint in this honorable court for the foreclosure of the security created by the said deed of trust in the interest of the said individual defendants hereto who were the holders of the bonds secured thereby, and such proceedings were had in the said suit for the foreclosure of the said deed of trust, that afterwards, to-wit, on February 25th, 1907, a final decree was rendered in this honorable court adjudicating that there was due for principal and interest on the bonds secured by the said deed of trust and held by the said individual defendants hereto the sum of thirty-four thousand, five hundred and

734     SUPREME COURT OF FLORIDA,

Knight & Wall Co. v. T. S. L. B. Co., et al.—Statement of Case.

eighty and 20-100 dollars ($34,580.20), and it was or-
dered, adjudged and decreed that in default of the pay-
ment of the said sum together with the costs of the said
proceeding all and singular the premises and property
belonging to the said Tampa Sand Lime Brick Com-
pany should be sold by a master therein appointed to
make such sale for the satisfaction of the said indebted-
ness; and your orators aver that in pursuance of the said
decree of foreclosure the said premises, to-wit, on the
first Monday in April, A. D. 1907, were put up for sale
at public outcry in front of the court house door of
Hillsborough county, in the city of Tampa, and then
and there struck off and sold to the defendant, C. Elmer
Webb, who was then and there the best bidder therefor,
for the sum of twenty-five hundred dollars, and that
afterwards, to-wit, on April 4th, A. D. 1907, a decree
was made by this honorable court confirming the said
sale and directing the special master making the same
to execute and deliver to the said C. Elmer Webb a deed
of conveyance conveying to him all and singular the
mortgaged premises described in the said deed of trust,
and that in pursuance of the said sale and the said
decree confirming the same the said special master so
executed and delivered to the said C. Elmer Webb a deed
of conveyance conveying to him all and singular the said
mortgaged premises which included the entire property
of the said Tampa Sand Lime Brick Company.

8th. That the said Tampa Sand Lime Brick Com-
pany is possessed of no property whatsoever except such
property as was so embraced in the said deed of trust
and so conveyed to the said C. Elmer Webb in pursu-
ance of the said foreclosure sale, and your orators and
the other creditors of the said Tampa Sand Lime Brick
Company by reason of the proceedings aforesaid have
been left without any property out of which they can
enforce payment of their just claims against the said

Tampa Sand Lime Brick Company, and your orators aver that the aggregate of the claims of your orators and the other unsecured creditors of the Tampa Sand Lime Brick Company amounts to a large sum of money, to-wit, the sum of thirty-five thousand dollars.

9th.   That no call was ever made by the directors of the said Tampa Sand Lime Brick Company on the defendants as stockholders thereof, or any of them, for the payment of any amount or amounts whatsoever on account of the stock issued and allotted to them respectively, and that the said defendants, and each of them, are now liable to pay to the said Tampa Sand Lime Brick Company the aggregate amount of about forty-five thousand dollars, on account of the stock so issued and allotted to them respectively, or so much thereof as shall be sufficient to pay and discharge in full all claims against the said Tampa Sand Lime Brick Company, and that your orators and the other creditors of the said Tampa Sand Lime Brick Company are entitled in equity to have a call made upon the said defendants as stockholders of the said company for the payment of the same, and to have a receiver of this court appointed in order to make a call for the same from the respective defendants.

10th.   And your orators further allege that they are informed and believe that about or prior to the time of the institution of the proceeding hereinbefore mentioned for the foreclosure of the aforesaid deed of trust, the defendants hereto, or a majority of them, made and entered into an agreement in writing among themselves whereby they agreed to pay and discharge the existing indebtedness of the defendant Tampa Sand Lime Brick Company, and that the said agreement was made for the benefit of the creditors of the said Tampa Sand Lime Brick Company, and in reliance thereon certain of the said creditors including your orators refrained

from taking steps for the enforcement of their claims against the said defendants, but your orators have never been furnished with the said agreement in writing and are unable to procure the same, but call for a discovery thereof from the defendants to the end that the same may be enforced for the benefit of the creditors of the said Tampa Sand Lime Brick Company in whose interest the said agreement was made and entered into.

To the end, therefore, that the said defendants, the Tampa Sand Lime Brick Company, a corporation, and L. W. Smith, John B. Moody, B. F. Byrd, C. E. Allen, W. B. Henderson George C. Warren, M. M. Jetton, Lee Dekle, T. N. Henderson, Fred T. Warren, C. Elmer Webb, D. O. Fulton, Adam Katz, John H. Drew, E. V. Whitaker, W. E. Johnson, Gordon Keller, Robert Keller, John Savarese, Samuel Essrig, Fred R. Berry, Morris Cracowaner, Otto P. Stallings, Asias Gottesmann, A. C. Moore, J. T. Neff, D. Afremow, T. J. O'Neal, and W. G. Paschall, and each of them, may, if they can show cause why your orators should not have the relief herein and hereby prayed and that they may according to the best and utmost of their several and respective knowledge, remembrance, information and belief, full, true, direct and perfect answer make to all and singular the premises in as full and particular a manner as if the same were herein set forth as interrogatories and the said defendants specially interrogated in regard thereto.

And in view of the premises may it please your honor to order, adjudge and decree that an accounting be had to determine the amount of stock in the said Tampa Sand Lime Brick Company acquired by each of the defendants respectively, and to order, adjudge and decree that the respective defendants shall pay to a receiver of the court to be appointed for that purpose an amount equivalent to the stock issued to them respec-

tively, or so much thereof as shall be necessary to pay and discharge in full the claims of all creditors who may become parties to this proceeding.

May it further please your Honor to order, adjudge and decree that all creditors of the said Tampa Sand Lime Brick Company who desire to participate in these proceedings shall be required in such manner and after such notice as unto your honor shall seem meet and proper to present and file in this court a statement of their claims against the defendants, and to order, adjudge and decree that an accounting be had by a master of the court to be appointed for that purpose to ascertain and pass upon such claims.

May it further please your honor to order, adjudge and decree that some fit and proper person be appointed a receiver of this court to make a call upon the respective defendants and to receive from the respective defendants the amount of their respective subscriptions to the said capital stock of the said Tampa Sand Lime Brick Company.

And your orators further pray that in the alternative in the event the foregoing prayers of this bill of complaint should be denied that your honor order, adjudge and decree that the written agreement made and entered into between the several defendants hereto for the benefit of your orators and the other creditors of the said Tampa Sand Lime Brick Company whereby the said defendants agreed to pay and discharge the indebtedness of the said Tampa Sand Lime Brick Company may be enforced by a decree of this honorable court requiring the parties to the said agreement to carry the same into effect by paying and discharging said indebtedness.

May it further please your honor to grant unto your orators the State's writ of subpoena directed to the said defendants, The Tampa Sand Lime Brick Company, a corporation, and L. W. Smith, John B. Moody,

47

B. F. Byrd, C. E. Allen, W. B. Henderson, George C. Warren, M. M. Jetton, Lee Dekle, T. N. Henderson, Fred T. Warren, C. Elmer Webb, D. O. Fulton, Adam Katz, John H. Drew, E. V. Whitaker, W. E. Johnson, Gordon Keller, Robert Keller, John Savarese, Samuel Essrig, Fred R. Berry, Morris Cracowaner, Otto P. Stallings, Asias Gottesmann, A. C. Moore, J. T. Neff, D. Afremow, T. J. O'Neal, and W. G. Paschall, and each of them, thereby commanding them and each of them on a day certain and under a certain penalty therein to be prescribed, personally to be and appear before your honor in this honorable court, then and there to stand to, abide and perform such orders and decrees herein as your honor shall make in the premises.

May it further please your Honor to grant unto your orators such other and further relief in the premises as the nature of the case may require and as unto your honor shall seem meet and agreeable to equity and good conscience."

All of the defendants, except the Tampa Sand Lime Brick Company, a corporation, interposed demurrers to this bill upon the following grounds in substance:

1st. That there was no equity in the bill.

2nd. That the bill wholly failed to state a case entitling the complainants to the relief prayed or to any relief in a court of equity.

3rd. That the complainants' remedy, if any, was at law.

4th. That said bill showed that complainants had not reduced their claims to judgments at law against the principal debtor, the Tampa Sand Lime Brick Company, and had not procured execution to be issued thereon and returned *nulla bona,* until which time the complainants have no remedy against the stockholders of said corporation in equity.

5th. That the bill does not make out a case entitling

VOL. 55, JANUARY TERM, 1908.    739

Knight & Wall Co. v. T. S. L. B. Co., et al.—Opinion of Court.

the complainants to any discovery as prayed for.

6th.    Because the allegations of the bill are vague and contradictory, and are not direct and positive.

7th.    Because the said bill is multifarious.

8th.    Because the bill fails to show any consideration moving to the defendants as stockholders of said corporation for their alleged agreement or contract to pay the debts of said corporation.

All of these demurrers were sustained by the circuit judge, and for review of this ruling the appellants have brought the cause here by appeal.

*Glen & Himes,* for appellants;

*Sparkman & Carter, P. O. Knight* and *C. C. Whitaker,* for appellees.

TAYLOR, J. (*after stating the facts.*)—The first question presented by the demurrers to this bill is: can the creditors of a corporation bring suit against the stockholders of such corporation to enforce their statutory liability without first having exhausted their remedies against the corporation itself, or without first reducing their claims to judgments at law against the corporation and having executions issued and returned *nulla bona?*

While the general rule is well established that a corporate creditor's suit to enforce payment of unpaid subscriptions to its stock can properly be brought only after a judgment at law has been obtained against the corporation, and an execution returned unsatisfied for lack of corporate property upon which to levy, yet this rule has its exceptions, and one of these exceptions to the rule is that where the corporation has been adjudged a bankrupt, or is notoriously insolvent, or has been dissolved, then the remedy against the corporation need not

first be exhausted. The reason assigned for such exception is that the law does not require wholly idle and useless things to be done. 1 Cook on Corp. (5th ed.) §§204, 205, 206, 207 and 219 and citations; McDonnell v. Alabama Gold Life Ins. Co., 85 Ala. 401, 5 South. Rep. 120; 3 Clark & Marshall on Private Corp., §798 *e* and citations; See v.Heppenheimer, 69 N. J. Eq., 36, 61 Atl. 843; First Nat. Bank v. Greene, 64 Iowa 445, 20 N. W. Rep. 754; Hardware Co. v. Tintic Milling Co., 13 Utah 423, 45 Pac. Rep. 200; Hodges & Wilson v. Silver Hill Mining Co., 9 Ore. 200; Fletcher v. Bank of Lonoke, 71 Ark. 1, 69 S. W. Rep. 580. In the last cited case the correct rule we think is stated as follows: "To hold stockholders in a corporation liable on their unpaid subscriptions, creditors must show that they have exhausted their legal remedies, or that it is insolvent." Harrison v. Remington Paper Co., 140 Fed. Rep. 385, 3 L. R. A. (N. S.) 954; Hospes v. Northwestern Mfg. & Car Co., 48 Minn. 174, 50 Nw. Rep. 1117, 15 L. R. A. 470. The case last cited is quite similar to the one under discussion in that it was a suit by the creditors of an insolvent corporation to compel its stockholders to pay for so-called "bonus stock" issued to them without being paid for, in which it was held that such stockholders were liable to creditors of the corporation to pay for such stock in full. Cleveland v. Marine Bank of Milwaukee, 17 Wis. 562; Morgan v. Lewis, 46 Ohio St. 1, 17 N. E. Rep. 558; Barrick v. Gifford, 47 Ohio St. 180, 24 N. E. Rep. 259; Latimer v. The Citizens' State Bank, 102 Iowa 162, 71 N. W. Rep. 225; Judge FREEMAN's Notes to Thompson v. Reno Sav. Bank, 3 Am. St. Rep. 814; Waeit on Insolvent Corporations, §§41—621.

In construing section 20, page 232 of McClellan's Digest of the laws of Florida, which section is in part brought forward as section 2681 of the General Statutes

of 1906, consummating the right of corporate creditors to proceed against the stockholders for the collection of their claims upon a dissolution of the corporation, this court, in the case of Gibbs v. Davis, 27 Fla. 531, 8 South. Rep. 633, has held that such *dissolution*, in the sense in which the term is used in the statute, takes place when the corporation comes into the condition of having debts and no assets, and has ceased to act and exercise its corporate functions, or has suffered acts to be done which end the object for which it was created.

The bill in this case, we think, sufficiently alleges the insolvency of the corporation to entitle the complainants to the relief they seek, without first having reduced their claims to judgment. It alleges in substance that all of the corporation's property and assets have been sold under foreclosure proceedings, and that there is no property of the corporation out of which its existent debts can be enforced. It is also well established that when a corporation is insolvent, and there exist subscriptions which have not been fully paid, a court of equity will disregard the formality of a call, and will order the unpaid subscriptions to be paid to a receiver for the benefit of the corporate creditors, or such court may, in its discretion, require its receiver to make and enforce a call upon the stockholders for unpaid subscriptions. 1 Cook on Corp. (5th ed.) §§108 and 207 and citations; 3 Clark & Marshall on Corp. §799; Easton Nat. Bank v. American Brick & Tile Co., 70 N. J. Eq. 732, 64 Atl. Rep. 917. In the case last cited the settled rule is adhered to that an agreement between a corporation and its stockholders to the effect that corporate stock shall be issued to them without receipt by the company of money or property equivalent in value to the par value of the stock, is void because contrary to law, and such an issuance of stock does not relieve the parties to whom the same has been gratui-

tously issued from liability to the corporation's creditors to pay for the same. To the same effect is the cause of Handley v. Stutz, 139 U. S. 417, 11 Sup. Ct. Rep. 530, and Morrow v. Nashville Iron & Steel Co., 87 Tenn. 262, 10 S. W. Rep. 495, 3 L. R. A. 37; 2 Thomp. on Corp. § 1586.

In the case of Stutz v. Handley, 41 Fed. Rep. 531, the rule is further correctly announced as follows: "This liability for the full amount represented by the unpaid stock, on the insolvency of the corporation, extends to persons to whom a portion of the new stock was issued as an inducement to purchase bonds of the corporation, though they, too, received certificates reciting that the stock was paid up, since their acceptance and holding of the stock is, in the legal effect, a subscription therefor which imports a promise to pay." Vermont Marble Co. v. Declez Granite Co., 135 Cal. 579, 67 Pac. Rep. 1057, S. C. 87 Am. St. Rep. 143.

The bill in this case alleges in substance that the entire capital stock of the defendant corporation is still unpaid, but was issued gratuitously to the parties sued as stockholders, upon their purchase of the bonds of the company. This, if true, according to the well established rule above announced, makes them, upon the corporation's insolvency, liable to the corporation's creditors, under our statute, for the full amount that *remains unpaid* upon such stock so issued to them, whether they formally subscribed therefor or not, their acceptance and holding thereof being equivalent to a formal contract of subscription, which imports a promise to pay.

It is again contended in support of said demurrers to the bill in this case that under the provisions of section 2677 General Statutes of 1906, the only resource of the complainants as corporate creditors against them as stockholders is against their stock, that is, that no matter what may be their legal liability as stockholders

to the creditors of the corporation, that under said section such liability can only be enforced by a levy upon and sale of their *stock in such corporation,* all of their other property both real and personal being by said section expressly exempted from such liability except their stock in such corporation.  The said section 2677 General Statutes of 1906, provides as follows:  "If any execution shall issue against the property or effects of any corporation, and there cannot be found whereon to levy, then such execution may be issued against any of the stockholders to an extent equal in amount for so much as may remain unpaid upon the subscription and no further; and all property whether real or personal of any stockholder in any corporation aforesaid shall be exempt from the debts and liabilities of such corporation contracted in its corporate capacity, except the stock of said stockholder of or in said corporation to the extent mentioned aforesaid."  This section of the revision is an awkward combination of a part of the words of section 22 of chapter 1639 of the laws enacted in 1868, and of section 1 of chapter 3729 approved May 31st, 1887, which last named act was entitled: "An Act Defining the Liability of Stockholders in any Corporation Organized Under the General Incorporation Laws of this State," and which changed the former liability of stockholders from that of the full amount of the face value of their stock to a liability only for the amount that remained unpaid upon their stock.  The said section 2677 from its peculiar phraseology may admit of the construction contended for by the defendants, but to put upon it that construction would be to convict the law-making power of doing the farcical by declaring in one breath that stockholders in corporations shall be liable for the debts of the corporation to the extent of their unpaid subscriptions, while in the next breath it declares that such liability shall be an empty sound and

vain delusion inasmuch as it must not be enforced except out of the worthless stock itself in an insolvent corporation, which stock is of less value even than the paper upon which the certificates of shares are printed when in its blank condition before being rendered useless by the printing of worthless matter thereon. . Maxwell on Stats. (4th ed.) p. 305, and Endlich on Interp. of Stats. §§264 and 265 and citations.   Statutes must be so construed as to give effect to the evident legislative intent, even if the result seems contrary to rules of construction and the strict letter of the statute.   Winters v. City of Duluth, 82 Minn. 127, 84 N. W. Rep. 788.   It was the evident intention of the legislature in the enactment into law of said section 2677 to make the stockholders of corporations liable to its creditors upon the insolvency of the company to the extent of any balance that remained unpaid upon the stock by them held at its par or face value, and the latter part of said section that exempts the property of such stockholders from the debts of the corporation, though awkwardly worded, was designed to exempt the stockholders' property from all of the corporation's debts, *except the debt due by the stockholders for the unpaid subscriptions to the corporation's capital stock.*   Such is our construction of this statute, and such is the only construction possible for it without convicting the legislature of enacting an absurdity into the form of law.   Section 2681 of the General Statutes of 1906, itself also a confusedly worded combination of parts of two or more formerly existing provisions of law, has nothing in it that militates against our construction of said section 2677, but should itself be construed in the same way.

We think that the averments of the bill are sufficiently direct and positive to call for answers.

Neither do we think that this bill is multifarious.

If, as is alleged in the bill, the defendant stockholders

entered into an agreement in writing to pay the corporate debts in consideration of forbearance on the part of the complainant creditors in the enforcement of their claims, then such forbearance is a well recognized consideration for such agreement and it may be enforced. We think also that the discovery sought of the defendants by the bill is proper, *viz*: the amount of stock held by each of the defendants, and the amount of any balance that remains unpaid upon such stock.

From what has been said it follows that the circuit court erred in its rulings sustaining the several demurrers of the defendants to the bill of complaint herein, and said orders appealed from are hereby reversed, and the cause remanded with directions for such further proceedings in the cause as shall be consonant herewith and comfortable to proper equity practice, the appellees to be taxed with the costs of this appeal.

SHACKLEFORD, C. J., COCKRELL, HOCKER AND WHITFIELD, JJ., concur;

PARKHILL, J., not participating.