STATE *ex rel.* H. A. HARRIS v. R. FLEMING BOWDEN, Tax Collector, *et al.*

150 So. 259.
Division B.
Opinion Filed October 9, 1933.

*DeHoff & DeHoff,* for Plaintiff in Error;

*J. E. Mathews* and *J. Turner Butler,* for Defendants in Error;

*Cary D. Landis,* Attorney General, *H. E. Carter* and *Robert J. Pleus,* Assistants, as *Amicus Curiae.*

BUFORD, J.—This case is before us on writ of error to a judgment in mandamus proceedings wherein the return to the alternative writ was held sufficient in law and motion for peremptory writ to issue, notwithstanding the several returns, was denied.

The purpose of the writ was to coerce the Tax Collector of Duval County to collect from the Whiddon's Cash Stores a State license tax of $250.00 and a county license tax of $125.00 under the provisions of Section 928 R. G. S., 1199 C. G. L., which was originally Section 35 of Chapter 6421, Acts of 1913, as amended by Chapter 6923, Acts of 1915, imposing a license tax upon merchants issuing or using trading stamps.

It was alleged in the alternative writ:

"That the Whiddon's Cash Stores, a corporation organized and existing under the laws of Florida, is engaged in the retail grocery business in Duval County, Florida, and in the conduct of such business they own and operate and/or control a chain of stores in said county and State;

"That in each and every one of the said several stores so operated and or controlled by the said Whiddon's Cash

Stores, a corporation as aforesaid, stamps or coupons are given by said Whiddon's Cash Stores with each and every cash purchase made of or from its said stores, and as an inducement to customers to trade therein;

"That these coupons are issued for varying amounts, depending on the sum total of the purchases made;

"That each · of these coupons has on it a recital that it represents a certain definite purchase, and in value equals a quarter, or a half, or a whole, or a multiple of one whole coupon, that is to say, its value as compared with one whole coupon;

"That each of said coupons has stamped upon its face its denominational value in dollars and cents, as the case may be. That the sum total of coupon values issued at the time of any purchase, and/or purchases is approximately commensurate with the amount of such purchase.

"That such stamps or coupons are redeemable for presents or cash regardless of the date printed thereon;

"That one of said coupons is hereto annexed, marked Exhibit 'A,' and made a part hereof;

"That a copy of the catalogue issued by the said Whiddon's Cash Stores of presents obtainable in exchange for, and upon presentation of, the aforementioned coupons or stamps is annexed hereto, marked Exhibit 'B,' and made a part hereof."

It is then alleged in effect that by the use of the coupons Whiddon's Cash Stores were engaged in the use of trading stamps within the contemplation of the sections above mentioned. It was alleged that Whiddon's Cash Stores consisted of a chain of stores operating in Duval County, Florida.

The return of the respondent Bowden admits that he is

Tax Collector, and that the relator is a citizen and tax payer of Duval County. The return says:

"The Respondent admits that Whiddon's Cash Stores, a corporation, is engaged in the retail grocery business in Duval County, Florida, and that the said corporation owns and conducts many grocery stores in said County. In conducting said grocery business, the said corporation issues a coupon with each purchase. For each Twenty Cents purchase, said company issues a whole coupon; for each nickel purchase, one-fourth of a coupon; for each Dollar purchase, five whole coupons. Said coupons are redeemable by the Company in cash at the rate of one-fourth cent for each whole coupon, or at the option of the holder of the coupon, they are redeemable by the company with what the company calls presents, none of which presents are groceries or connected with the grocery business. Each of said coupons has plainly printed thereon the following words:

" 'Redeemable in cash at the rate of ¼ cent for each whole coupon.

" 'In the event of any existing law, or the passage of any future law either State or Federal, prohibiting the redemption of our coupons, or imposing a tax on same, our redemption offer will become void.'

"A series of the coupons issued by said Company is attached to the return of J. Ollie Edmunds, as County Judge of Duval County, Florida, one of the respondents herein, and the same is made part hereof by reference.

"In 1913, the Legislature of the State of Florida, by the enactment of Chapter 6421, did impose certain license taxes upon merchants, and among other license taxes, imposed a State License Tax of $500.00, and a county license tax of $250.00 upon every store where there was offered with merchandise bargained or sold, any coupon, profit-sharing

certificate or other evidence of indebtedness or liability redeemable in premiums, and in and by said law and said Section 35 of said law, there was also imposed upon merchandise using trading stamps a tax of $250.00 for each place of business where such stamps were used.

"By the enactment of Chapter 6923, Laws of 1915, the Legislature of the State of Florida amended said Section 35 by eliminating or repealing that part of the license tax imposed upon each merchant who offered with merchandise any coupon, profit-sharing certificate, or other evidence of indebtedness or liability redeemable in premiums, and retained the license tax upon merchants who used trading stamps.

By reason of the enactment of the two laws hereinabove mentioned, the Legislature of the State of Florida made a clear distinction between the trading stamp or merchants using trading stamps, and merchants who offered with merchandise coupons, profit-sharing certificates or other evidences of indebtedness or liability, redeemable in premiums, and by reason of the laws of 1915, said license tax imposed upon merchants offering such coupons was repealed. Thereafter, and from the enactment of the said Law of 1915, this Respondent, and all of the predecessors in office of this Respondent have followed the legislative intention, and have always construed that the law imposing a license tax upon merchants offering such coupons to have been repealed, and it has been the construction of this Respondent and every predecessor in office of the Respondent since 1915, that the tax imposed of $250.00 upon merchants using trading stamps was not intended to apply, and did not apply to merchants, who offered coupons such as that offered by Whiddon's Cash Stores."

Further allegations of the Return need not be quoted here.

The sole question presented is whether or not the use of the coupons in the manner described in the writ and the return brings Whiddon's Cash Stores within the purview of the statute above referred to and, therefore, requires the payment of the license tax required by Section 35, *supra,* as amended, which reads, in part, as follows:

. "Merchants using trading stamps, shall pay a license tax of Two Hundred and Fifty ($250.00) Dollars for each place of business where they use such stamps."

. If we were to look only to the language of the Act of 1915 and the respective sections of the Revised General Statutes and Compiled General Laws in which the provisions of that Act are brought forward, we would reach the conclusion that the operation is within the purview of the Statute, but we must go further than this because it is the duty of the Court to determine from a view of the whole law, or from other laws, in *pari materia,* the evident intention of the Legislature, and when we do this the construction may be different from the literal import of the terms employed and, in such event, the evident intention must prevail over the literal import. In construing and applying a statute the essential object to be effectuated is to determine the valid legislative intent, and in reaching this determination we must consider the subject upon which the law operates, its language and purpose. Curry v. Lehman, 55 Fla. 847, 47 Sou. 18; Snowden v. Brown, 60 Fla. 212, 53 Sou. 548; Johnson v. Patterson, 67 Fla. 499, 65 Sou. 659; Lane v. State, 63 Fla. 220, 57 Sou. 622; State v. Johnson, 71 Fla. 363, 72 Sou. 477; Payne v. Payne, 82 Fla. 219, 89 Sou. 538; Knight & Wall Co. v. Tampa Lime Brick Co., 55 Fla. 728, 46 Sou. 285; People's Bank v. Arbuckle, 82 Fla. 479, 90 Sou. 458; State v. Beardsley, 84 Fla. 109, 94 Sou. 660; Getzen v. Sumter County, 89 Fla. 45, 103 Sou. 104.

With this rule in mind, we find that Section 35 of Chapter 6421, Acts of 1913, provides as follows:

"Merchants, Druggists and Storekeepers, shall pay a license tax as follows:

"For the first one thousand ($1,000.00) dollars or fraction of one thousand dollars of stock of merchandise, three ($3.00) dollars in each county, and for each place of business, and one and one-half ($1.50) dollars for each additional thousand or fraction thereof, but dealers in merchandise at wholesale only shall pay a license tax of one and one-half ($1.50) dollars for each thousand ($1,000.00) dollars of their stock of merchandise. Provided, That the words 'stock of merchandise' shall be held to mean the cash value of the merchandise or goods on hand, and not the amount of capital stock invested in the business; Provided further, That any merchant keeping sewing machines in stock for sale in the same manner as other merchandise shall not be taxed as a sewing machine agent or dealer.

"Provided further, That each and every person, firm or corporation, who shall offer with merchandise bargained or sold in the course of trade any coupon, profit-sharing certificate, or other evidence of indebtedness or liability, redeemable in premiums, shall pay annually a State License Tax of Five Hundred dollars ($500.00), and a county license tax of Two Hundred and Fifty ($250.00) in each and every county in which said business is conducted or carried on, and if more than one place of such business shall be operated by any person, firm or corporation a separate State and County license shall be taken out for each such place; and no person, firm or corporation shall offer with merchandise, bargained or sold as aforesaid, any coupon, profit-sharing certificate or other evidence of indebtedness or liability redeemable by any other person, firm or corporation

than the one offering the same without paying the above license for each other person, firm or corporation who may redeem the same. The license prescribed in this Section shall be in addition to other licenses prescribed by this Act. Any person violating any of the provisions of this Section, whether acting for himself or as the agent of another, shall on conviction thereof be punished by fine not exceeding one thousand ($1,000.00) dollars, or by imprisonment in the County Jail not exceeding six months.

"Mercantile Agencies: Shall pay a license tax of one hundred ($100.00) dollars in each County in which an office is established.

"Merchants using trading stamps shall pay a license tax of two hundred and fifty ($250.00) Dollars for each place of business where they use such stamps."

In 1915 the Legislature amended this Section by the provisions of Chapter 6923. The pertinent part of the amendment is as follows:

"Merchants, Druggists and Storekeepers, shall pay a license tax as follows:

"For the first one thousand ($1,000.00) dollars or fraction of one thousand dollars of stock of merchandise, three ($3.00) dollars in each county, and for each place of business, and one and one-half ($1.50) dollars for each additional thousand or fraction thereof; but dealers in merchandise at wholesale only, shall pay a license tax of one and one-half ($1.50) dollars for each one thousand ($1,000.00) dollars of their stock of merchandise, Provided, That the words 'stock of merchandise' shall be held to mean the cash value of merchandise or goods on hand, and not the amount of capital stock invested in the business; Provided, further, that any merchant keeping sewing ·machines in

stock for sale in the same manner as other merchandise shall not be taxed as a sewing machine agent or dealer.

· "Mercantile Agencies. Shall pay a license tax of fifty ($50.00) dollars in each county in which an office is established.

· "Merchants using trading stamps, shall pay a license tax of two hundred and fifty ($250.00) for each place of business where they use such stamps."

We, therefore, observe that in the Act of 1913 the Legislature provided for the imposition of an entirely different tax for each of three separate sorts of operation. It first applied to those "who shall offer with merchandise bargained or sold in the course of trade any profit-sharing certificate or other evidence of indebtedness or liability redeemable in premiums shall pay annually a State license tax of $500.00, and a county license tax of $250.00 and provided that this tax should obtain in each county and for each place of business where this operation was carried on." ·

The Act further provided, "And no person, firm or corporation shall offer with merchandise bargained or sold as aforesaid any coupon, profit sharing certificate, or other evidence of indebtedness or liability redeemable by any other person, firm or corporation than the one offering the same without paying the above license· for each other person, firm or corporation who may redeem the same." Then the Act provided a third and different tax by providing: "Mer-- chants using Trading Stamps shall pay a license tax of $250.00 for each place of business where they use such stamps."

· The Act of 1915 eliminated all these provisions except that providing that: "Merchants using trading stamps shall pay a license tax of $250.00 for each· place of· business. where they .use such stamps." The only result accom-

plished by the amendment was to eliminate that part of the existing statute which applied to persons, firms or corporations "who shall offer with merchandise bargained or sold in the course of trade any coupon, profit sharing certificate or other evidence of indebtedness, or liability redeemable in premiums, and which applied to persons, firms or corporations redeeming such coupons, profit sharing certificates, or other evidence of indebtedness or liability redeemable in premiums."

So it is that it is clear that by the amendment of the Act of 1915 the legislative intent is shown to be exactly the same as if it had, instead of merely eliminating that part of the previous statute, enacted a law reading:

"Merchants using trading stamps shall pay a license tax of $250.00 for each place of business where they use such stamps, provided, however, that this Act shall not apply to any person, firm or corporation who shall offer with merchandise bargained or sold in the course of trade, any coupon, profit-sharing certificate, or other evidence of indebtedness or liability redeemable in premiums nor shall it apply to any person, firm or corporation who may redeem such coupons, profit-sharing certificates, or other evidence of indebtedness or liability in premiums."

This being the clear intent of the Legislature, and the record showing that the operation as conducted by Whiddon's Cash Stores is that for which a license was required under Section 35 of Chapter 6421, Acts of 1913, but which requirement was eliminated by the amendment of Section 35 as effectuated by Chapter 6923, Acts of 1915, we must hold that Whiddon's Cash Stores are not required to pay that other tax which was contemplated by the Legislature to be paid by merchants using trading stamps in the sense

and purview of the most narrow construction of the words "trading stamps."

It is contended that this construction of the statute would necessarily lead to this provision of the statute being held unconstitutional because of its violation of the equal protection clause of organic law. This may be true, but if giving full effect the clear legislative intent brings any statute into conflict with organic law, the statute must fall. In fact, all statutes which are held to be unconstitutional because of the contents of the statute, are so held because of the fact that the legislative intent as gathered from the language of the legislative action is in conflict with organic law. It is not necessary for us in this case to determine whether or not the provision referred to in the existing statute is constitutional. We merely hold that the legislative record shows that it was the clear legislative intent not to require a license tax for that operation which is being conducted by Whiddon's Cash Store as portrayed in the record before us.

For the reasons stated, the judgment should be affirmed, and it is so ordered.

Affirmed.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL and BROWN, J. J., concur.