THORNAL, Justice
We have for review by appeal a final decree sustaining the validity of Chapter 63-1789, Laws of Florida, 1963, and granting other declaratory relief.
The appellee Town of Largo, filed a complaint for a declaratory decree to determine the effect of Chapter 63-1789, Laws of Florida, 1963. Appellant Boca Ciega Sanitary District was created under Chapter 153, Part II, Florida Statutes, F.S.A. Its purpose was to provide sewer services to residents of the District. The boundaries of the District were established in 1961. The northern boundary was contiguous to the southern boundary of the Town of Largo. *482 Subsequently, Largo annexed a portion of the District lying immediately south of the Town boundary. Thi9 produced a territorial overlapping with a resultant contest over jurisdiction of the area. Boca Ciega Sanitary District, Pinellas County v. State, Fla., 161 So.2d 529.
In organizing the District the appellant Pinellas County advanced $3,000 out of its general fund. It also used approximately $68,000 which were borrowed for the benefit of the District from the Federal Housing and Home Finance Agency. Under Section 153.61, Florida Statutes, F.S.A. these funds were repayable out of the proceeds from the sale of any securities subsequently issued by the District. Boca Ciega Sanitary District v. State, supra.
By Chapter 63-1789, supra, a local act, the Legislature provided for the abolition of tire District The act, however, also provided that (1) all assets of the District shall be surrendered to the City of Seminole, and (2) that “[a]U liabilities and obligations of said district shall become the liabilities and obligation of the city of Seminole * * This local act was to become effective upon approval by a majority of the electors voting in a referendum in the District at a special election to be held within 180 days but not less than 150 days from the date that the act was filed in the office of the Secretary of State. The act was so filed on June 18, 1963.
The City of Seminole was not in existence when Chapter 63-1789, supra, was enacted. It was created by Chapter 63-1927, Laws of 1963, a local act likewise subject to referendum. The City of Seminole Act was to become effective when approved at a referendum to be held within 150 days, but not less than 120 days after it was filed tn the office of the Secretary of State. This act was filed on June 5, 1963.
Within the time stipulated, the City of Seminole referendum was held. The majority voted against the act. Hence, the City of Seminole never came into existence. Thereupon, the Pinellas County Commissioners refused to call an election to pass upon Chapter 63-1789, supra, which made provision for abolishing the Boca Ciega District.
In the instant litigation the Chancellor sustained the validity of Chapter 63-1789, supra. He directed the County Commissioners to call a referendum election to consider whether the statute should become effective. He was of the view that the failure of the electorate to approve Chapter 63-1927, creating the City of Seminole, had no bearing on the matter. The election was ordered, even though the statutory time for holding the same had long since expired. This appeal ensued.
The critical question is whether Chapter 63-1789, supra, could ever have any effect in view of the fact that the creation of the City of Seminole under Chapter 63-1927, supra, had been rejected.
The appellants contend that the County Commissioners acted properly in refusing to call the election on Chapter 63-1789, supra, because it would have been a useless gesture to do so. Their position is that Chapter 63-1789, supra, is so interwoven with Chapter 63-1927, supra, that when the latter failed, the former necessarily fell with it.
Executive or administrative officials cannot arbitrarily refuse to call an election when directed to do so by the Legislature. If they do, a court under its general equity powers can direct compliance with the legislative mandate. Williams v. Keyes, 135 Fla. 769, 186 So. 250. We must decide, therefore, whether the Pinellas County Commissioners acted in this instance arbitrarily and without legal justification when they declined to call the election on the Boca Ciega abolition statute.
Our analysis of the two statutes which we have mentioned, leads us to conclude that the calling of an election on the Boca Ciega Act would have been a useless expenditure of public funds. Chapter 63- *483 1789, supra, abolishing the District, and Chapter 63-1927, supra, creating the City of Seminole, were clearly in pari materia. State ex rel. Harris v. Bowden, 112 Fla. 288, 150 So. 259. The former could not be given effect without the approval of the latter. When the latter failed, the former also failed.
The two acts were passed at the same session of the Legislature. They both had a material bearing on the subject of this litigation — the provision of sewer services in the Boca Ciega District. Tamiami Trail Tours v. Tampa, 159 Fla. 287, 31 So.2d 468. The election for the creating of the City of Seminole was obviously timed to precede the election for the abolition of the Boca Ciega District. In point of time the latter election could not be held until the former had been completed. Clearly, the abolition of the District could not be effectively accomplished under Chapter 63-1789, supra, unless the City of Seminole came into being with the approval of the electorate under Chapter 63-1927. In abolishing the District the Legislature properly made provisions for the transfer of its assets, obligations and liabilities to the proposed City of Seminole. This was part and parcel of a composite plan. These provisions were impossible of accomplishment when the City never came into existence. Consequently, the legislative scheme for abolishing the District collapsed with the adverse decision of the electorate regarding the creation of the City of Seminole. The holding of a referendum on Chapter 63-1789, supra, would have accomplished nothing but expense. If Chapter 63-1789 had been approved it could not have had any effect because there was no entity to accept the District’s assets and assume its obligations and liabilities. Hence, the District would necessarily continue in being. If Chapter 63-1789 were rejected, the result would have been the same. The potential effectiveness of the Boca Ciega statute rested squarely upon the necessity of approval of the Seminole statute. When the latter was rejected the legislative plan for abolishing the District was thereby frustrated. The County Commissioners were therefore justified in refusing to call the referendum on the Boca Ciega Act.
The ultimate result is that Chapter 63-1789, supra, is not and cannot now be made effective. Boca Ciega Sanitary District has not been abolished. It remains in existence with all the powers, obligations, privileges and liabilities otherwise imposed by law.
The decree is reversed and the cause is remanded to the Chancellor for the entry of a decree consistent herewith.
It is so ordered.
THOMAS, Acting C. J., and ROBERTS, O’CONNELL, CALDWELL and ERVIN, JJ., concur.