203 So.2d 173 (1967)
Robert GEORGE, Appellant,
v.
STATE of Florida, Appellee.
Nos. 67-117, 67-118.
District Court of Appeal of Florida. Second District.
October 20, 1967.
Rehearing Denied November 6, 1967.
*174 Robert E. Jagger, Public Defender, and Joseph F. McDermott, Asst. Public Defender, Clearwater, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Wiliam D. Roth, Asst. Atty. Gen., Lakeland, for appellee.
Rehearing Denied November 6, 1967 in No. 67-117.
PIERCE, Judge.
Appellant Robert George appeals separate judgments of conviction entered against him in the Pinellas County Circuit Court pursuant to jury verdicts finding him guilty upon two informations tried jointly, charging substantially identical offenses.
George was charged in one information with obtaining merchandise and other property of the value of $100.00 from W.T. Grant Company, a corporation, by the giving of a worthless check. In a second information he was similarly charged with the giving of a worthless check for $150.00 to obtain property from Wm. Henry, Inc., another St. Petersburg Department Store.
The testimony at the trial produced no conflict. The check to Grant's for $100.00 was passed on October 6, 1965, for which George received part cash and part merchandise. The check to Henry's for $150.00 was passed on October 11, 1965, for which he received all cash. In both instances defendant George not only signed the checks as maker but also made the same payable to himself and then simply endorsed them over respectively to the two stores. The bank records of Florida National Bank at St Petersburg disclosed that at the time the checks were given George did not have sufficient funds in any account with the bank to pay the same. The Henry check was cashed by the sales clerk only upon the express approval of the assistant store manager. The Grant check was likewise accepted only after express approval by the manager. Both checks were returned by the bank, marked "insufficient funds". Defendant George was identified by the respective sales ladies as the person who passed the checks. The *175 foregoing is a fair synopsis of the evidence upon which the jury convicted.
F.S. Sec. 832.05(3,) F.S.A., provides as follows:
"(3) Obtaining property in return for worthless checks, etc.; penalty
(a) It shall be unlawful for any person, firm or corporation to obtain any services, goods, wares or other things of value by means of a check, draft or other written order upon any bank, person, firm or corporation, knowing at the time of the making, drawing, uttering, issuing or delivering of said check or draft that the maker thereof has not sufficient funds on deposit in or credit with such bank or depository with which to pay the same upon presentation, provided however that no crime may be charged in respect to the giving of any such check or draft or other written order where the payee knows or has been expressly notified or has reason to believe that the drawer did not have on deposit or to his credit with the drawee sufficient funds to insure payment thereof."
Defendant George contended before the Trial Court, and reiterates here, that the proviso contained in the latter portion of Sec. 832.05(3) which says that the "drawer" of a check cannot be prosecuted if, at the time the check is given, the "payee" knows or has reason to believe that the check is worthless, immunizes him from prosecution. This is so, says George, for the reason that he himself was the "payee" and he knew the checks were worthless when he passed them.
It is contended that the term "payee" in the proviso must be given a strict construction, and therefore if the "payee" named in the check had knowledge that the maker lacked bank funds to pay the check, the maker would be exempt from prosecution. Further, that it would be without incidence that the "payee" and the "maker" were one and the same person.
This is the sole contention made by George for reversal, and it might well appeal to one with an ingenious or inventive bent of mind. But it would strain an intelligent credulity to the breaking point, and would make a mockery of our criminal laws. The established canons of statutory construction are sufficiently broad and flexible to discard such argument.
Sec. 832.05(3) shows an intention by the legislature to protect "any person, firm or corporation" selling or dispensing "any services, goods, wares or other things of value". In fact, Sec. 832.05(1) sets forth in plain terms that the "purpose" of the entire Section 832.05 "is to remedy the evil of giving checks * * * on a bank without first providing funds in * * * the depository on which the same are * * * drawn to pay * * * the same, which tends to create the circulation of worthless checks * * * and a mischief to trade and commerce."
The intent of a legislative act, as deducible from its language and legislative setting, is as much a part of the law as the words themselves, Pillans & Smith Co. v. Lowe, 1934, 117 Fla. 249, 157 So. 649, and in determining that legislative intent, the subject matter on which the statute operates as well as the language of the statute must be considered, State ex rel. Harris v. Bowden, 1933, 112 Fla. 288, 150 So. 259. A statute should be construed and applied so as to fairly and liberally accomplish the beneficial purpose for which it was adopted, even if the result seems contradictory to ordinary rules of construction and the strict wording of the statute. Beebe v. Richardson, 1945, 156 Fla. 559, 23 So.2d 718; Hanson v. State, Fla. 1952, 56 So.2d 129; Tylee v. Hyde, 1910, 60 Fla. 389, 52 So. 968; City of Fort Lauderdale v. Des Camps, Fla.App. 1959, 111 So.2d 693; Foley v. State ex rel. Gordon, Fla. 1951, 50 So.2d 179.
A statute should not be construed to bring about an unreasonable or absurd result, but rather to effectuate the obvious *176 purpose and objective of the legislature. State ex rel. Florida Industrial Commission v. Willis, Fla.App. 1960, 124 So.2d 48. The law favors a rational and sensible construction of statutes so as to avoid an unreasonable or absurd result. Sharon v. State, Fla.App. 1963, 156 So.2d 677.
A logical and practical intent should be ascribed to every legislative act. Silver Sands of Pensacola Beach, Inc. v. Pensacola Loan & Sav. Bank, Fla.App. 1965, 174 So.2d 61. And the manifest intent of the legislature will prevail over any literal import of words used by it; and no literal interpretation leading to an unreasonable conclusion or a purpose not intended by the law should be given. Worden v. Hunt, Fla.App. 1962, 147 So.2d 548.
Applying the foregoing principles to Sec. 832.05(3), the conclusion is manifest that the word "payee" must be given a broad and liberal construction to include not only the person to whom the check is nominally payable but to any person to whom it is knowingly given or passed, especially if the latter is the one parting with the property for which the check was drawn.
Furthermore, if George's contention of "strict construction" be carried to its ultimate ad absurdium, he would be directly caught in his own legal vice by the preceding Sec. 832.05(2), which makes it a misdemeanor to simply "pass" a worthless check, but also provides that if the check is for $50.00 or more "and the payee * * * receives something of value therefor", the offense is a felony punishable up to five years in the State Prison.
It is obvious from a literal reading of the quoted portion that George would be directly amenable to Sec. 832.05(2) because he was the "payee" and he received "something of value". But it is equally obvious that the words "payee or a subsequent holder thereof" were inadvertently used by the legislature. Undoubtedly, it was the intent of the legislature that the person who "receives something of value" for the check was meant to refer to the maker or the person who passes the check in exchange for that "something of value".
Suffice to say that, in any event, George is amenable to prosecution for passing the Grant and Henry checks. If a liberal construction is adopted, he is subject to Sec. 832.05(3). If a strict construction is adopted, he is subject to Sec. 832.05 (2). And the statutory penalties are identical. We prefer to rest affirmance upon a liberal and practical construction of Sec. 832.05(3).
We are not unmindful of the general rule that statutes defining criminal offenses are to be strictly construed. However, even this rule has its exceptions, particularly when it runs counter to reasonableness.
Penal statutes must be strictly construed, but they are not to be construed so strictly as to emasculate the statutes and defeat the obvious intention of the legislature. State v. Hooten, Fla.App., 122 So.2d 336. In other words, such strict construction is subordinate to the rule that the intention of the lawmakers shall be given effect. Chapman v. Lake, 1933, 112 Fla. 746, 151 So. 399; Haworth v. Chapman, 1933, 113 Fla. 591, 152 So. 663. And the U.S. District Court has held in Florida that while a penal statute is strictly construed in favor of the accused, this does not require a meaning frustrating its purpose. United States v. Eastern Air Lines, Inc., D.C.Fla. 1961, 192 F. Supp. 187. Lastly, the U.S. Supreme Court has held in United States v. Standard Oil Co. (1966), 384 U.S. 224, 86 S.Ct. 1427, 16 L.Ed.2d 492, that a "[r]ule of strict construction [a] cannot provide [the] substitute for common sense, precedent and legislative history."
Thus, criminal statutes are, for all practical purposes, placed on a parity with other statutes insofar as involves the proposition that usual rules of construction yield to the *177 obvious intention of the legislature. And we have already hereinbefore expressed our view as to the legislative intent in the statute here involved.
The judgments of conviction appealed from are 
Affirmed.
ALLEN, Acting C.J., and HOBSON, J., concur.