QUESTIONS: 1. Are municipalities and other nonstate agencies subject to the requirements of s. 287.055(3)(a) or (4), F. S.? 2. If so, is a program of continuous inspections, investigations, examinations, and analyses of a municipal water and sewer service system under a continuing contract a "project" as defined by s.287.055(2)(f), F. S., and thus subject to the requirements of s.287.055(3)(a) and (4), F. S.?
SUMMARY: Municipalities and other nonstate agencies are still subject to the notice requirements and the competitive selection and negotiation requirements of the CCNA (s. 287.055, F. S.). 1975 amendments did not operate to impliedly repeal these requirements as to the local governmental units designated in the act. A program of continuous inspections, investigations, examinations, and analyses of a municipal water and sewer service system under a continuing contract could be construed as a study activity within s. 287.055(3)(a), F. S., and subject to the act if it involves professional fees of more than $5,000 and provides for other than general advice and assistance, but that is a factual question to be determined by the governing body of the municipality or other governmental agency. Section 287.055, F. S., the Consultants' Competitive Negotiation Act (CCNA), has been the subject of several Attorney General Opinions during the preceding years. As I noted in AGO 074-308, the CCNA: . . . was designed to provide procedures for state and local government agencies to follow in the employment of professional service consultants so as to make more competitive the contracting for professional services and to require the employing of the most qualified and competent individuals and firms at fair, competitive, and reasonable compensation. [Attorney General Opinions 073- 216 and 075-56; emphasis supplied.] The purpose of the CCNA has also been stated as "to require competitive negotiation with a view of obtaining the most qualified firm for a particular project at the most reasonable compensation." Attorney General Opinions 074-191 and 075-86. Since 1973, the CCNA has defined "agency" to include the state or a state agency; a municipality or political subdivision; and a school district or school board. Section 287.055(2)(b), F. S. Section 2, Ch. 75-281, Laws of Florida, added a definition of the word "project" which reads, in part: "Project" means that fixed capital outlay study or planning activity described in the public notice of the state or a state agency pursuant to paragraph (3)(a). An agency shall prescribe by administrative rule procedures for the determination of a project under its jurisdiction. . . . [Section 287.055(2)(f), F. S.; emphasis supplied.] Section 287.055(3)(a), F. S., requires that each agency publicly announce: . . . each occasion when professional services are required to be purchased for a project whose basic construction cost is estimated by the agency to be more than $100,000 or for a planning or study activity when the fee for professional services exceeds $5,000 . . . . Public notice shall include a general description of the project . . . . (Emphasis supplied.) The material which I have italicized is added to the subsection as a result of the 1975 amendments (s. 2, Ch. 75-281). Since the definition of the word "project" refers to the activity described in the public notice required by s. 287.055(3)(a), F. S., it is not permissible to rely solely upon the disembodied language of the first sentence of s. 287.055(2)(f), F. S., for an inclusive definition of the word "project." All parts of a statute must be read together. Amos v. Conkling, 126 So. 283 (Fla. 1930); State ex rel. Harris v. Bowden, 150 So. 259 (Fla. 1933). Each part of a statute is to be construed in connection with every other part, Tampa J. Ry Co. v. Catts, 85 So. 364 (Fla. 1920); In re Opinion to the Governor, 60 So.2d 321 (Fla. 1952), and force and effect given to each part thereof. State ex rel. Finlayson v. Amos, 79 So. 433 (Fla. 1918); AGO 057-269. Statutory definitions usually control the meaning of statutory words, but statutory definitions do not control where obvious incongruities in language would be created and where the major purpose of the statute would be destroyed. Lawson v. Suwannee Fruit Steamship Company,336 U.S. 198 (1949). I further note that the title of Ch. 75-281, Laws of Florida, describes the amendment to s. 287.055(3)(a), F. S., as . . . eliminating the public notice and selection process requirements for professional service contracts for projects the estimated basic construction cost of which is $100,000 or less or a planning or study activity of which the fee is $5,000 or less . . . . The title of an act may be considered in determining legislative intent and may serve to aid in the construction of the body of the act and as evidence of that legislative intent. Curry v. Lehman, 47 So. 18 (Fla. 1908); State ex rel. Church v. Yeats,77 So. 262 (Fla. 1917). The function of the title is to define the scope of the act. County of Hillsborough v. Price, 149 So.2d 912
(2 D.C.A. Fla., 1963). Section 287.055(3)(a), as amended by Ch. 75-281, still requires that each agency (as defined by s.287.055(2)(b), F. S.) publicly announce each occasion when professional services (as defined by s. 287.055(2)(a), F. S.) are required for a project (as determined by each agency having jurisdiction, s. 287.055(2)(f), F. S.) when the cost of that project exceeds the prescribed amounts. Therefore, any implied limitation of the notice requirement, restricting it to only those projects contemplated by the state or state agencies, which appears in the first sentence of s. 287.055(2)(f) contradicts the existing law (s. 287.055[3][a]), as well as the second sentence of s. 287.055(2)(f), both of which were added to or amended by Ch. 75-281 limiting the notice requirement for projects of a certain cost. The question of whether an amendment to a statute effects an implied amendment or repeal of an existing statute is one of legislative intent. State v. Gadsden County, 58 So. 22 (Fla. 1912), State ex rel. Worley v. Lee, 168 So. 809 (Fla. 1936), State ex rel. Myers v. Cone, 190 So. 698 (Fla. 1939), In re Wade, 7 So.2d 797
(Fla. 1942). In this case, not only is the clear legislative intent to repeal a portion of the notice requirement absent, but, further, it seems clear that the legislative intent was to limit notice requirements for projects below a certain dollar cost, not for projects contemplated by municipalities and other nonstate agencies. In the absence of a clear indication of legislative intent to limit the application of the CCNA to state and state agency projects only, cf. State ex rel. Housing Authority of Plant City v. Kirk, 231 So.2d 522 (Fla. 1970), I can see no fashion in which the statute can be read as a cohesive whole, given the intent previously described (AGO's 073- 216, 074-191, 075-56, and 075-86), and yet construe s. 287.055(2)(f), F. S., as effecting an implied repeal of the application of a major portion of the act. The legislative intent as gathered from the language of a statute is the law, State ex rel. Davis v. Knight, 124 So. 461 (Fla. 1929); Pillans Smith Co., Inc. v. Lowe, 157 So. 649 (Fla. 1934), even though that intent may apparently contradict the strict letter of the statute, or a part thereof. State v. Sullivan,116 So. 255 (Fla. 1928); Singleton v. Larson, 46 So.2d 186 (Fla. 1950). When the CCNA is examined and read in its entirety, the manifest legislative intent and purpose to regulate the competitive negotiation of contracts by consultants for certain professional services by designated local governments is clearly the overriding purpose of the act and therefore controls. This purpose is in no way affected by the first sentence of s.287.055(2)(f), which cannot be construed to defeat the overriding purpose of the act. Municipalities and nonstate agencies are subject to the Consultants' Competitive Negotiation Act (s.287.055, F. S.), and 1975 amendments to that act did not operate to impliedly repeal the application of the act to municipalities and other nonstate agencies. Your first question is answered in the affirmative. As to your second question, a program of continuous inspection, investigations, examinations, and analyses of a municipal water and sewer system, under a continuing contract, might be construed as a study activity within s.287.055(3)(a), F. S., and therefore would be subject to the act if the fee for professional services involved were greater than $5,000. Attorney General Opinion 075-131 states that a city may employ a city engineer under a yearly contract to provide general advice and assistance without complying with the CCNA each time the city called upon the city engineer for advice or assistance pursuant to the contract. Such a contract would not be a project pursuant to the CCNA. That same opinion also states that "such an employment contract should be limited to general advice and assistance; and an engineering contract for a particular `project' should be negotiated in compliance with the CCNA requirements." Anything further than general advice probably falls within the intent of the CCNA, as has been previously expressed. I note further that s. 287.055(2)(f)1. and 2., F. S., provides for procedures for determination of projects which are couched in terms of construction, rehabilitation, or renovation activities. Whether or not a particular project falls within the parameters indicated above is a question of fact to be determined in each instance by the responsible agency and challenged by parties who disagree. The Attorney General is not a fact-finding official or body. Attorney General Opinion 075-78.